No. 49.—NANCY WATERS, plaintiff in error, *vs.* JESSE A. BEAN, defendant in error.

[1.] Where a *feme* is sued on a promissory note, made by her while *covert*, and she pleads her coverture in bar, it is not a good replication, that she promised to pay the note, after she was constituted a *free dealer* by Statute; no new consideration or previous moral obligation, or separate estate, secured to her at the time she gave the note, being shown, to support the promise.

Assumpsit, &c. in Gordon Superior Court. Decision by Judge JOHN H. LUMPKIN, September Term, 1854.

This was an action by Jesse A. Bean, against Nancy Waters, upon a note. It appeared that the note was given while the maker was a *feme covert*. She was subsequently declared a free dealer, by Act of the Legislature; and after that time, promised to pay the note. The question was submitted to the Court below, upon these facts, whether Bean was entitled to recover. The Court held that he was; and this decision is assigned as error, by Mrs. Nancy Waters.

JOHNSON & CHURCH, for plaintiff in error.

WOFFORD, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The only question which arises upon this record, and which has been argued with such commendable zeal and ingenuity, *pro* and *con*, by our young brethren, Wofford and Johnson, is whether, where a *feme* is sued on a promissory note, made by her while *feme covert*, and she pleads her coverture in bar, it is a good replication, that she promised to pay the note, after she had been made a *free dealer*, by Act of the Legislature, no new consideration or previous moral obligation being shown, to support the contract?

It is laid down as a general rule, in all the elementary works on husband and wife, that a married woman cannot bind herself, by any contract made during the coverture. Not as in the case of an infant, from any presumption of incapacity, but because she has no separate existence, her husband and she being, in contemplation of law, but one person. The reason of the disabilities imposed on the wife, by reason of the coverture, are fully discussed by Mr. *Bright* and other writers. It is unnecessary to repeat them.

In the great case of *Marshall vs. Rutton*, (8 *T. R.* 545,) the doctrine, on this subject, was fully considered by all the Judges in England, except Mr. *Buller*, (it being the custom, in the early ages, when an important point arose in any one of the Superior Courts, to request the assistance of the other two, to hear and assist in deciding it,) and the result was, that a person who contracted with a married woman, as far as any right in a *Court of Law* is concerned, relies upon her bare word; for she is not recognized, *there*, as capable of binding herself, by any contract whatever, except her husband be civilly dead, or a foreigner, belonging to a country at war with her own, or a *sole trader*, made such by Statute. As a mere matter of le-

gal lore, I would remark that this was the last case, perhaps, where the practice was pursued, to which I have just referred.

It is stated by Mr. *Chitty*, in his Treatise on Bills, (*page* 24,) that if a married woman give a promissory note, and after the death of her husband, promise to pay it, in consideration of forbearance, such promise is void ; and the author cites *Floyd* *vs. Lee*, (1 *Strange*, 94) ; and *Lee vs. Muggeridge*, (5 *Taunt.* 36,) in support of this proposition.

Now this goes much farther than the case at bar. Here, the attempt is, to charge the defendant on the old contract, by virtue of the new promise ; and that, too, without any new consideration ; either a forbearance to sue or otherwise.

This same principle is thus announced by Judge *Story* : "By the law of England and America, a married woman is incapable, *in any case*, of becoming a party to a bill of exchange, so as to charge herself with any obligation, whatever, ordinarily arising therefrom. This results from her general disability to enter into any contract, under the Common Law ; for during the marriage, her very being or legal existence, is suspended ; or at least, is incorporated or consolidated into that of her husband." (*Story on Prom. Notes,* §85, 93.)

It has been held, that where a *feme* was under a moral obligation to pay a bond, executed by her when covert ; and she, after the death of her husband, promised to pay it, her executors were held liable, on this subsequent promise. (5 *Taunt.* 37.) I do not indorse this doctrine.

But in the case before us, there is no moral obligation shown, nor any new consideration, to support the subsequent promise ; and the contract being wholly void, by reason of the coverture, the subsequent promise to pay was without consideration, and cannot bind the defendant.

We do not say, if she had a separate estate, secured to her at the time she gave the note, the promise may not be inferred at law. Though assumed to be true, in point of fact, in the argument, there was not a scintilla of proof to authorize it.

But for the special Statute constituting Mrs. Waters a free dealer, and which enables her to sue and be sued, alone, (see

*Pamphlet Acts,* 1849–'50, *p.* 182,) for the sake of conformity, the.husband, if alive and within the State, and the relation of marriage still subsisting, should be joined in the action.

The first case of a suit by a married woman, without joining her husband, is that of *Lady Belknap,* in the Year Book of of *2d Hen.* 4, whose husband, the Lord High Treasurer, had been banished to Gascony. And, notwithstanding his transportation, the lawyers.of those days were struck with so much surprise that they commemorated it by a Latin distich, which Lord *Coke* has thought worthy to preserve in the 1st Institute :

" *Ecce modum mirum quo femina fert breve regis—*
*Non nominando virum, conjunctum robore legis".*
Judgment reversed, and cause remanded.