## W. D. INGERSOLL *vs.* LEWIS MARTIN.

*Contract—Consideration—Nudum pactum—Release under seal
—Subsequent promise.*

As between the immediate parties to a negotiable promissory note, while the note itself is *prima facie* evidence of the consideration, the question of consideration is always open; and it is competent to the defendant to show, by parol, that there was no sufficient consideration, or that the consideration had failed, or that the paper had been given for accommodation merely.

If a debtor, by paying part of his admitted debt, obtains from his creditor an agreement to release the residue, such an agreement is *nudum pactum,* and therefore inoperative; for the simple reason that the debtor is under a legal obligation to pay the whole debt.

But a release *under seal* imports consideration, and such a release of an existing debt is a sufficient discharge without anything more.

A mere moral obligation is not a sufficient legal foundation for a promise to pay.

Where there is a pre-existing obligation to pay, either legal or equitable, which cannot be enforced, and the party promises, notwithstanding he may be exempt from all liability *by operation of law,* the former liability, in connection with the honesty and rectitude of the thing, form sufficient consideration to support the promise.

But a promise to pay the debt, after it has been *voluntarily released by the creditor,* is not supported by a sufficient legal consideration to make it binding.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the following prayer:

That if the jury shall find that the defendant being indebted to the plaintiff on the 19th day of January, 1880, in the sum of $840, executed the promissory note of that date, for the sum of $255.44, and that on the 22nd day of July, 1880, when said note matured, executed the two promissory notes upon which this suit has been brought, in renewal of the same, and delivered them to the plaintiff, that then the plaintiff is entitled to recover.

And the defendant offered the three following prayers:

1. That if the jury find that the notes sued upon are notes given by the defendant to the plaintiff, in renewal of an original note from the defendant to the plaintiff, bearing date of January 19th, 1880; and if the jury further find, that since said original note was given, the plaintiff executed to the defendant a release under seal, whereby the plaintiff did release, acquit, exonerate and discharge the defendant from all claims, suits or demands, which could or might be brought against him, for or on account of any indebtedness then existing between them; if the jury further find, that the parties to this suit are immediate parties to said note, the verdict should be for the defendant.

2. If the jury find that the original note (of January 19th, 1880,) in this case is of even date with the release, they may consider the testimony in the case, with a view of establishing whether or not in fact the release was executed after the note was given.

3. If the jury find that the consideration of the notes sued upon, or of the original note, was an indebtedness previously released under seal, they must find for defendant.

The Court, (GILMOR, J.,) granted the plaintiff's prayer, and refused the prayers of the defendant. The defendant excepted, and the verdict and judgment being rendered against him, appealed.

The cause was submitted to BARTOL, C. J., STONE, GRA-SON, MILLER, ALVEY, ROBINSON, IRVING and RITCHIE, J.

*E. Shriver Reese*, for the appellant.

Considerable looseness attended the earlier decisions on the general subject of moral or equitable considera-tions, and in the apparent absence of any fixed rule, each case seems to have been decided upon the individual ideas entertained by the particular Judges upon the general subject of moral obligation or duty. From the rate at which some of the cases were progressing, the law would scarcely have stopped short of the rule of ethics that in every promise there is the necessary moral obligation that the promisor should do that which he promises. It was first held that a mere moral obligation to pay a demand or perform a duty, was sufficient to uphold an express promise, although no legal liability existed at the time the promise was made, the honesty and rectitude of the thing being a consideration. Considerable doubt was thrown upon this doctrine by an able note to *Wennall vs. Adney*, 3 *B. & P.*, 249, which seems to have been the first occasion of a reaction. This was followed by several cases, such as *Littlefield vs. Shee*, 2 *B. & Ad.*, 811, when the opinion was expressed that the former doctrine as to moral considerations was to be received "with many qualifications and restricted to much narrower limits." The rule afterwads adopted, and which undoubtedly embraces the present law on the subject, is as follows: "An express promise can only revive a precedent good consideration, which could have been enforced at law, through the medium of an implied promise, had it not been suspended by some positive rule of law; but it can give no original right of action, if the obligation upon which it is founded could never have been enforced at law, though not barred by any legal maxim or statutory provision." This is the rule given in the note to *Wennall*

*vs. Adney,* before cited, and its accuracy has since then been fully recognized, and upheld both abroad and in the several States. *Eastwood vs. Kenyon,* 11 *A. & E.,* 438; *Beaumont vs. Reeve,* 8 *Q. B.,* 483; *Cook vs. Bradley,* 7 *Conn.,* 57; *Smith vs. Ware,* 13 *John.,* 257; *Mills vs. Wyman,* 3 *Pick.,* 207; *Hawley vs. Farrar,* 1 *Vt.,* 420; *Ehle vs. Judson,* 25 *Wend.,* 97; *McPherson vs. Rees,* 2 *Penn.,* 521; 1 *Parsons on Contracts,* (6th Ed.,) 431; *Story on Prom. Notes, sec.* 185; *Story on Contracts, sec.* 590, (5th Ed.)

It is not at a variance with the above rule to hold that a promise to pay a debt barred by limitations, discharged by bankruptcy, and the like is binding. The present case however falls directly within the operation of the rule, for the obligation upon which the promise rests could never have been enforced through the medium of an implied promise. In all the later decisions where an equitable or moral consideration has been held sufficient to support a subsequent promise, it will be seen that there has been something more than a mere moral obligation, and that the promise has been enforced only because some positive provision of the law had intervened to prevent a legal recovery.

In *Groff vs. Rohrer,* 35 *Md.,* 337, an equity case, the Court say: "The doctrine of meritorious considerations originates in the distinction between the three classes of considerations on which promises may be based, viz., a valuable consideration, the performance of a moral duty and a mere voluntary bounty. The first of these classes alone entitles the promisee to enforce his claim against an unwilling promisor."

In *Nightingale vs. Barney,* 4 *Green,* (Io.,) 106, and in *Ex parte Cornwall,* 4 *Bank. Reg.,* 134, it was expressly decided that a mere moral obligation is not sufficient to support a promise to pay, even though embodied in a promissory note. The question of moral considerations is

elaborately treated in 1 *Chitty on Contracts*, (11*th Am. Ed.*,) 52, *et seq.*, to which especial reference is made.

Narrowing the question down to the particular moral obligation that may be deemed to accompany a promise to pay a debt which has been voluntarily released by the creditor, a number of cases have been found, though none of them in this State, where this particular point has been passed upon and decided in favor of the promisor. *Warren vs. Whitney*, 24 *Maine*, 561; *Shepard vs. Rhodes*, 7 *R. I.*, 474; *Montgomery vs. Lampton*, 3 *Met.*, (*Ky.*,) 519; *Snevely vs. Read*, 9 *Watts*, 396; *Stearns vs. Tappin*, 5 *Duer*, (*N. Y.*,) 294; *Valentine vs. Foster*, 1 *Met.*, 520; *Stafford vs. Bacon*, 1 *Hill*, 532.

*J. Alexander Preston*, for the appellee.

A note made for a debt voluntarily released is valid; because a legal and equitable obligation to pay is a valid consideration; and the defendant himself testifies that he promised "to endeavor to pay him up, if he (I) could." 2 *Daniel on Negotiable Instruments*, sec. 182, *p.* 155; *Stafford vs. Bacon*, 25 *Wend.*, 384; *Ellicott vs. Peterson*, 4 *Md.*, 476; *Yates vs. Hollingsworth*, 5 *H. & J.*, 216; *Valentine vs. Foster*, 1 *Metcalf*, 520.

The release did not operate to relieve the appellant from the payment of the notes. *Lyall vs. Edwards*, 6 *Hurl. & Nor.*, 336; *Rich vs. Lord*, 18 *Pickering*, 322.

ALVEY, J., delivered the opinion of the Court.

This action was brought to recover the amount of two promissory notes, dated the 22nd of July, 1880, and made by the appellant, payable to the appellee or order. The pleas were *non assumpsit*, payment, and "that after the alleged claims accrued, and before suit, the plaintiff by deed released the defendant therefrom." Issues were joined.

It appears that on January 19th, 1880, the appellant was indebted to the appellee in the sum of $840. And

being so indebted, and unable to pay the amount in full, he proposed to the appellee to pay part of the amount in cash, provided he was fully released from the payment of the residue. This proposition was acceded to by the appellee, and thereupon a release of that date was executed under hand and seal of the appellee, reciting that the appellant was then indebted to the appellee in the sum of $840, and was unable to pay the same in full, and had offered to pay the appellee the sum of $336, on condition that the appellee would release him from all liability on account of the said sum of $840; and that such proposition had been accepted by the appellee. The release then proceeds to declare, that in consideration of the premises, and of the sum of $336, the receipt of which was acknowledged, the appellee released, exonerated and discharged the appellant, and his personal representatives, from all claims, suits or demands, which could or might be brought against him or them, for or on account of the said sum of $840, or any other indebtedness existing at the date of the release,—thereby declaring that he had accepted the said sum of $336, in payment of all claims against the appellant. This release was delivered to the appellant, and was produced by him at the trial.

Of the same date as this release, that is, the 19th of January, 1880, the appellant made his promissory note to the appellee or order, at six months, for $255.44, payable at the National Farmers and Planters Bank of Baltimore. The making of this note and the release would seem to be parts of one and the same transaction, though the appellant testifies that the note was made and delivered to the appellee immediately preceding the making and delivery of the release. This, however, would be quite immaterial, if it be true that the amount for which the note was given formed a part of the debt of $840 released, and was not for that part thereof that was to be paid in cash.

According to the testimony of the appellant, the note of the 19th of January, 1880, was, at the expiration of the six months, renewed by the appellant, by the giving of the two notes sued on, dated the 22nd of July, 1880, at three and four months respectively. These notes were negotiable, and were also made payable at the National Farmers and Planters Bank.

The appellant was the only witness who testified in the cause, and his explanation of the transaction is this. He says positively that he paid the $336 in cash, at the time of accepting the release. He says, he gave the note at the same time for the $255.44, being part of the debt that was released, and that he did so at the request of the appellee, and for his accommodation merely, it being fully understood that the appellant was not to be called upon for payment, unless he should become able to pay. And in speaking of the renewal notes, being those sued on, he says, they were given to help the appellee along; he was to carry them from time to time; and they were given as a renewal of a debt from which he, the appellant, had already been released. They were renewals of the original note of the 19th of January, with interest.

Taking this as the correct statement of the case, the question is, whether there was sufficient legal consideration for the notes sued on in this case. And this involves the question, whether the previous indebtedness had been so completely extinguished, by the release under seal, as not to form the basis of the supposed subsequent promise to pay?

As between the immediate parties to a negotiable promissory note, as in this case, while the note itself is *prima facie* evidence of the consideration, the question of consideration is always open; and it is competent to the defendant to show, by parol, that there was no sufficient consideration, or that the consideration had failed, or that the paper had been given for accommodation merely. This was a settled principle in the law of evidence in rela-

tion to negotiable instruments.    1 *Pars. on Notes and Bills*, 176 *to* 194.

This being clear, the next general principle involved is, that the payment of a smaller sum in satisfaction of a larger is not a good discharge of a debt.    If, therefore, a debtor, by paying part of his admitted debt, obtains from his creditor an agreement to discharge the residue, such an agreement is *nudum pactum*, and therefore inopera- tive; for the simple reason that the debtor is under a legal obligation to pay the whole debt.    This proposition has often been decided, both by the Courts of England and of this State.    *Fitch vs. Sutton*, 5 *East*, 232, approved and followed in the case of *Geiser vs. Kershner*, 4 *G. & J.*, 305.    And to these many other cases might be added.

But a release *under seal* imports consideration, and such a release of an existing debt is a sufficient discharge without anything more.    Such has been the law from an early time.    In *Co. Litt.*, 212 *b*, we find it laid down, that "where the condition is for payment of twentie pounds, the obligor cannot at the time appointed pay a lesser sum in satisfaction of the whole, because it is apparent that a lesser sum of money cannot be a satisfac- tion of a greater.    But if the obligee do at the day receive part, and thereof make an acquittance *under his seal* in full satisfaction of the whole, it is sufficient, by reason that the *deed* amounted to an acquittance of the whole."    And this same principle is fully recognized by this Court, in the recent case of *State, use of Gott vs. Barnard*, 44 *Md.*, 341, 347.

The question then is, whether, notwithstanding the release under seal, the former debt could constitute a sufficient legal consideration for the promise contained in the notes sued on in this case?

It may be conceded that there was a moral obligation to pay the debt in full, notwithstanding the technical release; and yet a mere moral obligation simply would

not be a sufficient legal foundation for the promise. It was said by Lord MANSFIELD, in the case of *Hawkes and Wife vs. Saunders, Cowp.*, 289, that "where a man is under a legal or equitable obligation to pay, the law implies a promise, though none was ever actually made. *A fortiori*, a legal or equitable duty is a sufficient consideration for an actual promise. Where a man is under a moral obligation, which no Court of law or equity can enforce, and *promises*, the honesty and rectitude of the thing is a consideration." This general statement of the principle stood for some time as an authoritative enunciation of the law; but more recent decisions have considerably qualified the latter part of the statement. It is now understood, both in England and in this State, as being so restricted as not to apply or extend to that class of cases which arise out of the moral duties or affections alone. There must be something more to support an express promise to pay. *Ellicott vs. Peterson*, 4 *Md.*, 476, 492; *Eastwood vs. Kenyon*, 11 *Ad. & Ell.*, 438.

But while such limitation upon the general principle has been established, it is perfectly well settled, that where there is a pre-existing obligation to pay, either legal or equitable, which cannot be enforced, and the party promises, notwithstanding he may be exempt from all liability by operation of law, the former liability, in connection with the honesty and rectitude of the thing, form sufficient consideration to support the promise. *Ellicott vs. Peterson, supra.* And as familiar illustrations of this principle, and its application, the cases of promises to pay debts barred by the Statute of Limitations, and those to revive debts discharged by the operation of bankrupt or insolvent laws, may be cited. *Yates vs. Hollingsworth*, 5 *H. & J.*, 216.

There is, however, a distinction taken in the decided cases between the case of an exemption or discharge from all pre-existing liability by operation of some positive.

provision of law, and the case of a release or discharge from liability by the voluntary act of the creditor himself. In the former case, it is held by all the authorities, that the pre-existing obligation, though fully and completely discharged by operation of law, is, nevertheless, a sufficient foundation for a new promise to pay; as in the cases before referred to, of a debt barred by the Statute of Limitations, or where the debtor has been discharged therefrom under a bankrupt or insolvent law; while in the latter case, that is, a discharge by act of the creditor; it has been held by what would appear to be the preponderance of authority, that the pre-existing liability that has been so released, does not form a sufficient consideration for a new promise to pay. The distinction certainly is not very broad; but still it has obtained the sanction of several Courts of high authority, and we are not disposed to disregard it.

It was upon this distinction that the case of *Stafford vs. Bacon*, 1 *Hill*, 532, was decided. There a debt had been discharged by accord and satisfaction for less than the amount due, and it was held, that there remained no such moral obligation to pay the balance as would support a subsequent promise to pay, though it would have been otherwise, as declared by the Court, if the discharge had been by mere operation of law. So in the case of *Warren vs. Whitney*, 24 *Me.*, 561, it was held, that a promise to pay a debt that had been voluntarily released by the creditors was not binding for want of a sufficient legal consideration,—proceeding upon the distinction that we have just stated. And the same principle, founded upon this same distinction, was held and applied in the case of *Montgomery vs. Lampton*, 3 *Metc.*, (*Ky.*,) 519, and also in the case of *Shepard vs. Rhoades*, 7 *R. I. Rep.*, 470.

In the case of *Willing vs. Peters*, 12 *Sergt. & R.*, 179, it was thought that the distinction was not substantial and well founded, and it was there held, that a promise

Ingersoll *vs.* Martin.

by the debtor to pay a balance of a debt after it had been voluntarily released by the creditor, was good and binding; though it would appear the Courts have not been inclined to follow that decision.

Taking, then, the distinction to be established, and that a promise to pay the debt, after it had been voluntarily released by the creditor, is not supported by a sufficient legal consideration to make it binding, it follows that there was error in the ruling of the Court below in respect to the instructions asked by the respective parties. The instruction granted at the instance of the appellee is erroneous, for the reason that it omits all reference to the release, and the effect of that instrument upon the preexisting debt, if the notes sued on were found to have been given for that part of such debt that had been released. We also think that there was error in rejecting the first and second prayers offered by the appellant; though there was none in rejecting the third, as that prayer was not sufficiently definite in its terms.

*Judgment reversed, and*
*new trial ordered.*

(Decided 2nd March, 1882.)