(Decided 21st June, 1893.)

---

GEORGE W. ROBINSON, Administrator and Guardian, and others *vs.* JOHN E. HURST.

*Life insurance Policy—Assignment to Creditor—Bona fide Indebtedness—Beneficiary—Conflict of Laws—Moral obligation as a Consideration—Legal representatives.*

F. a member of a firm applied to H. a member of another firm, for a loan. H. loaned him the firm's money to the amount requested, being assured by F. of the solvency of his firm. Shortly afterwards the firm of which F. was a member failed, and the firm of H. being paid a part only of the amount of the loan, H. paid the balance. F. being cognizant of the fact that H. had reimbursed his firm the balance due it, and being desirous to repay the amount, took out a policy on his life to secure the same, and inclosed the policy to H. duly assigned, and assented to by the company, which F. trusted H. would receive and hold

as the best security he could then offer.   F. died, and H. institu-
ted suit on the policy.   HELD :

That the loan was not a business transaction for the benefit of the
firm of which the plaintiff was a member, but was a personal
matter, and the plaintiff was entitled as against the representa-
tives of the deceased, to the benefit of the indemnity furnished by
the policy.

The provision in a life insurance policy declaring that the claim by
any creditor, as beneficiary or assignee, thereunder, shall not
exceed the amount of the actual *bona fide* indebtedness of the
assured to him, does not require him to show such *bona fide* in-
debtedness where the controversy is not with the insurance com-
pany but with the children and personal representative of the
assured, and where the insurance company has disclaimed any
interest in the controversy and has deposited the money in Court
to be paid to any person entitled to the same.

A life policy issued by a New York corporation to a citizen of
Maryland on an application made through an agent of the cor-
poration in Baltimore, and assigned to a citizen of Maryland, will
be construed according to the laws of Maryland, notwithstanding
it was by a condition therein expressly made a New York
contract.

A moral obligation is a sufficient consideration to support a promise
to pay.   ·

A life insurance policy taken out solely for the purpose of reim-
bursing a creditor of the assured, may be assigned to such credi-
tor, though in terms it is made payable to the "legal representa-
tives" of the assured.

APPEAL from the Circuit Court of Baltimore City.

Suit was instituted by the appellee in the Superior
Court of Baltimore City against the Mutual Reserve
Fund Life Association to recover on a policy for $1,500
issued by said Association to Alfred B. Faulkner, and
which said Faulkner had duly assigned to the appellee.
The association filed a bill of interpleader in the Circuit
Court of Baltimore City, and paid the amount of the
policy into the registry of the Court.   Under an order
of the Court, the appellee and the appellants were

directed to interplead, and set forth their respective rights and claims to the fund. From a decree of the Court, (DENNIS, J.,) awarding the sum to the appellee, the appeal in this case was taken. The facts of the case are sufficiently presented in the opinion of this Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, ROBERTS, and MCSHERRY, J.

*John M. Carter,* (with whom was *F. A. Thompson,* on the brief,) for the appellants.

*Edwin Harvie Smith,* for the appellee.

In the case of *Fletcher vs. New York Life Insurance Company,* 13 *Fed. Rep.,* 528, the Court says: "The defendant corporation chose to embark in business within this State under the terms and conditions named in the statute. It could not by paper contrivances, however specious, withdraw itself from the operation of the laws by force of which it could alone do business within the State." See also the following cases: *Gardner vs. Lewis,* 7 *Gill,* 287; *Smith, Garnishee vs. McAtee,* 27 *Md.,* 438; *Cromwell and Sloan vs. Royal Canadian Ins. Co.,* 49 *Md.,* 366; *Universal Life Ins. Co. vs. Bachus,* 51 *Md.,* 28; *Ben Franklin Ins. Co. vs. Gillett,* 54 *Md.,* 212; *North State Copper and Gold Mining Co. vs. Field,* 64 *Md.,* 153; *Lafayette Ins. Co. vs. French,* 18 *How.,* 405.

If this, then, is a Maryland contract there can be no doubt that under our statute it is assignable, and that by the assignment, which is an absolute one, the assignor divested himself of all interest in it and the legal title thereto vested absolutely in the assignee. Code, Art. 33, sec. 63. *Harrison vs. McConkey,* 1 *Md. Ch. Dec.,* 19; *Crawford vs. Brooke,* 4 *Gill,* 219; *Whiting, use of, &c. vs. Independent Mutual Ins. Co.,* 15 *Md.,* 326; *Emerick vs. Coakley,* 35 *Md.,* 188.

If the policy were not assignable under New York law and were so here, a Maryland Court would be bound to maintain its validity. *Story's Conflict of Laws*, 28; *Davis vs. Jacquin*, 5 *H. & J.*, 109; *Wilson & Co. vs. Carson & Co.*, 12 *Md.*, 75.

But the appellants have wholly failed to show that the policy is not as fully assignable under the New York statute as it is under ours. In reality it is just as much so.

In the case of *St. John vs. Am. Mut. Life Ins. Co.*, 13 *N. Y.*, 37, the New York Court of Appeals says: "The policies being good and valid in the hands of the assured were assignable like any other *chose in action.*" See also, *Griswold vs. Sawyer*, 125 *N. Y.*, 411; *Greenwood vs. Holbrook*, 111 *N. Y.*, 469; *Baron vs. Brummer*, 100 *N. Y.*, 375; *Marcus vs. St. L. Mut. Life Ins. Co.*, 68 *N. Y.*, 625; *Barnes vs. Underwood*, 47 *N. Y.*, 358; *McCray vs. McCray*, 13 *Abbott's Pr.*, 3; *Phyfe vs. Phyfe*, 3 *Brad.*, 45.

The policy being payable to the assured or his legal representatives, the appellants based their contention on the theory that the words "legal representatives" mean the heirs or next-of-kin of the decedent, being in this case the children of the deceased, and they claim that the policy could not be assigned without their consent. We maintain that they are to be construed according to their ordinary meaning which is "executors" or "administrators." In the case of *Griswold vs. Sawyer*, 125 *N. Y.*, 411, the Court says: "The strict, technical, *prima facie* meaning of these words (legal representatives) is executors or administrators, and they must always have this meaning unless it can be seen they were used in a different sense." See also, *May on Ins.*, sec. 173; *Angell on Ins.*, sec. 332; 1 *Greenleaf on Ev.*, sec. 278; *Cox vs. Curwen*, 118 *Mass.*, 198; *Herman vs. Mer. Ins. Co.*, 81 *N. Y.*, 187.

But should the words be construed to mean the next-of-kin that would still include an assignee. *New York*

*Mut. Life Insurance Co. vs. Armstrong,* 117 *U. S.,* 591; *New York Life Ins. Co. vs. Flack,* 3 *Md.,* 341; *Saloway vs. Strawbridge,* 1 *Kay & John.,* 371.

A creditor has an insurable interest in the life of his debtor. *Brockway vs. Mut. Ben. Life Ins. Co.,* 9 *Fed. Rep.* 255.

A creditor of a firm has an insurable interest in the life of one of the partners thereof, even though another partner may be entirely able to pay the debt, and the estate of the deceased prefectly solvent. *Morrell vs. Trenton Mut. Life and Fire Ins. Co.,* 10 *Cush.,* 282; 11 *Am. and Eng. Enc.,* 320.

The moral obligation resting upon the decedent is a sufficient considertion to support his promise to pay. *Hawkes and Wife vs. Saunders, Cowper,* 289; *Drury and Wife vs. Briscoe & Randall,* 42 *Md.,* 154; *Stevenson vs. Reigart,* 1 *Gill,* 26; *Ellicott vs. Peterson's Exr's,* 4 *Md.,* 476; *Ingersoll vs. Martin,* 58 *Md.,* 75.

ROBERTS, J., delivered the opinion of the Court.

The appeal in this case is taken from a decree of the Circuit Court of Baltimore City. The facts disclosed by the record are that Albert B. Faulkner, a member of the firm of Bruff, Maddux & Faulkner, sometime in the month of January, 1885, applied to the appellee, who was the senior member of the firm of Hurst, Purnell & Co. for a loan of two thousand dollars. The appellee said *he* had no money to loan, but that he would loan him the firm's money to the amount requested, if he could be convinced that he was safe in so doing. Faulkner assured him of the solvency of his firm, and succeeded in obtaining the loan. Within thirty days after this transaction, the firm of Bruff, Maddux & Faulkner assigned for the benefit of creditors, and in the April following effected a compromise with their creditors, at forty cents in the dollar. The appellee's firm

were subsequently paid forty cents in the dollar of their claim, amounting to eight hundred dollars, and allowed as a credit in said claim, the sum of one hundred and fifty dollars for account of the storage of certain merchandise which reduced the indebtedness of Bruff, Maddux & Faulkner, to the sum of $1,047, which amount the appellee paid to his firm. From a careful examination of the testimony contained in the record, we think there can be no reasonable doubt that Faulkner was fully aware of the fact that the appellee had treated his original negotiation with Faulkner in the loan of two thousand dollars as a personal matter, in which he allowed his confidence in Faulkner's integrity, to control his conduct, and that his firm ought not to be the loser in a matter which was a personal favor bestowed, and not a business transaction for the benefit of his firm. Faulkner was undoubtedly cognizant of these facts, and of the fact that the appellee had reimbursed his firm the balance due it, and in his subsequent dealings with the appellee, he manifestly considered himself as occupying towards the appellee the same relation which integrity and honesty had imposed upon the appellee in his conduct towards his own firm. This, we think, clearly appears from the testimony of Mr. Jones, when in answer to the third interrogatory he says: "Well, Mr. Faulkner told me on several, many occasions subsequent to his failure, that he felt badly mortified owing Mr. Hurst, and Mr. Robinson W. Cator certain moneys which he had borrowed of them, and that they were aggravated with him, that he should have borrowed that money, when he was on the verge of failing, and that they had so expressed themselves. I said to Mr. Faulkner that he ought to do something for these gentlemen, and either he suggested, or myself, I am not sure which, that he would take out or send to them an insurance on his life sufficient to cover the debts; this conversation was

in reference to both Hurst and Cator, so that if he died, they would get their money; and he told me of several parties to whom he owed money, that if he lived, he expected to pay them, and among those was Hurst and Cator, and I was another one.'' Further on Mr. Jones in answer to the 12th interrogatory in chief, which reads: ''Do you know on what grounds Mr. Hurst objected to signing for Hurst, Purnell & Company?'' Answer. ''He objected on the grounds that the money which Mr. Faulkner owed him was a private, confidential loan upon which he made nothing, and which he said Mr. Faulkner must return him.'' But if any doubts remain the following letter ought to dissipate the same:

*Phila.*, April 21st, 1886.

Mr. John E. Hurst,
　　　　Baltimore, Md.

Dear Sir:—Last June I offered to transfer to you a policy of insurance on my life, as security for the balance of the amount due you by B. M. & F., but you said you preferred not to take it then, because Mr. Bruff had agreed to pay you the balance of the debt; as he has failed to carry out the compromise, I hand you herewith the policy, viz., Policy No. 33838 in the Mutual Reserve Fund Life Assn., of N. Y., for $1,500.00, which I trust you will accept and hold as the best security I can offer you now. Please acknowledge receipt and be kind enough to let me know how much has been paid to you.

I enclose assignment of the policy in duplicate, one of which I think has to go to the Co. in N. Y., and if these are not properly drawn, will you please have two properly drawn by the agent in Balto., and forwarded to me and I will execute them at once.

　　　　　　Yours respectfully,
　　　　　　　　A. B. Faulkner.

In such a state of case there can be no necessity for us to trouble ourselves with any question of law, as it is purely a question of fact.   The appellee considered himself a creditor of Faulkner, and Faulkner admitted that he was, and in seeking to discharge the debt, he has resorted to a method which in no manner involved the firm of Bruff, Maddux & Faulkner, or detracted from the assets of the firm, but he wagered his own life in its fulfilment, and he had both in law and morals, a perfect right, self-imposed though it be, to insure his life, in order that he might thereby be able to give indemnity to friends, who in financial straits had assisted him, and he at the same time had deceived.   It was not only justice to his friends, but in the highest degree honorable to himself.   If the appellee had voluntarily paid for Faulkner or his firm a sum of money, for which he was under no legal obligation to pay, and instead of insuring his life for the benefit of the appellee, he had executed a mortgage in favor of Hurst, on certain property to indemnify him against loss, could it be fairly argued, that the appellee was not entitled to the benefit of the indemnity, or that Faulkner had no right to comply with the dictates of his conscience in giving the indemnity?   Acting under no restraint, but freely and voluntarily he transferred the policy in question as follows:

For value received, I do hereby assign, transfer and set over unto John E. Hurst, of Baltimore City, the above named certificate of membership, and all sums of money, interest, benefit and advantage whatsoever now due, or hereafter to arise, or to be had or made by virtue thereof, to have and to hold unto the said John E. Hurst.

In witness thereof I hereunto set my hand and seal, this twenty-first of April, one thousand eight hundred and eighty-six.

ALFRED B. FAULKNER, (L. S.)

---

Robinson, *et al. vs.* Hurst.

---

Executed and delivered in the presence of
JAMES D. CARTER.

The "Mutual Reserve Fund Life Association," hereby consent to the above assignment, subject to the conditions of the certificate.

New York, May 5th, 1886.

J. M. STEVENSON,
*Asst. Secretary.*

Our attention has been called to the latter part of the seventh condition of the Certificate, which is in the following words : "An insurable interest must be shown by all claimants, at time of claim hereunder, and claims by any creditor as beneficiary or assignee, shall not exceed the amount of the actual *bona fide* indebtedness of the member to him, together with any payment made to the association under this certificate by such creditor, with interest at six per cent., and this certificate as to all amounts in excess thereof shall be void." It is claimed by the appellants, but we think erroneously, that the appellee is by this condition required to show that he is a *bona fide* creditor of the assured. If the controversy here was between the appellee and the association, then there might be some force in the argument, as the condition is intended for its own protection, but in this case, the company is no longer a substantial party, having filed its bill of interpleader and disclaimed having any interest whatever in the controversy, and declared its willingness to pay the avails of the policy to any person entitled to the same, and having, by order of the Court, paid the same into the registry of the Court, to abide the determination of the suit, it is no longer interested in its determination. The parties controverting on this appeal are the two children of Mr. Faulkner, who died in June, 1891, and his personal representative, George W. Robin-

son, and they seek the avails of said policy, on the ground already stated, and they also plead the Statute of Limitations to bar any right of action, which the appellee has set up. Without discussion we say that the plea of limitations is clearly not applicable here, as Faulkner has repeatedly admitted the claim and regretted the manner in which it had been contracted, and declared his intention to do all in his power to liquidate the same, and for the purpose of extinguishing it, made the assignment of said policy to the appellee. It is also contended by the appellants, that the policy issued to Faulkner is expressly made a New York contract by the tenth condition therein, and we must therefore look to the Courts of that State for an authoritative construction of its provisions, and we are referred to *Supreme Council, &c. vs. Green,* 71 *Md.,* 266, as sustaining this view. That case does not affect the question sought to be raised here, and only declares the rule of construction long since accepted, that where a statute of another State has received judicial interpretation by the Courts of such State, declaring its meaning and effect, the construction will be adopted, although not in accordance with the decisions of other States upon somewhat similar statutes. This however is not the question now under consideration here. The application for the policy was made through the agent of said association resident at Baltimore City, and whilst Faulkner was a resident of this State, and at the time of the assignment of the policy, both the assignor and assignee thereof, were residents of the State of Maryland, where this controversy is now depending, by the voluntary application of the association to a Court of this State, for the exercise of its powers. We are called upon to determine, not the meaning and effect of a *statute,* but to declare the legal rights of the respective parties to this controversy, which in no way involves the construction of any statute

of the State of New York. It is not reasonable to suppose that the Courts of this State will in such a case as this record here presents, seek to extend the application of the rule just referred to, and adopt as controlling authority, the decisions of the Courts of other States, when at variance with the declared law of this State. We are therefore to ascertain and declare the legal rights of the parties to this action arising out of the contract of insurance of said association, and in so doing we shall be controlled by the law as settled by the decisions of this Court, giving at the same time due consideration to the decisions outside of the State. It is claimed that the avails of this policy cannot enure to the appellee,

*First.*—Because he was not a creditor of said Faulkner, nor of his firm.

*Second.*—Because the policy was payable to "the legal representatives of Alfred B. Faulkner (self.)"

*Third.*—Because he took no interest in said policy in virtue of the assignment thereof.

Some consideration has already been given to the *first* proposition, but we may add that this Court has never, when called upon, hesitated to say, that a moral obligation is a sufficient consideration to support a promise to pay. *State vs. Reigart*, 1 *Gill*, 26; *Ellicott vs. Peterson's Ex'rs*, 4 *Md.*, 492; *Ingersoll vs. Martin*, 58 *Md.*, 75; *Drury and Wife vs. Briscoe and Randall*, 42 *Md.*, 154.

In *Hawkes vs. Saunders, Cowper's Rep.*, 290, Lord MANSFIELD says: "When a man is under a moral obligation, which no Court of equity can enforce, and *promises*, the honesty and rectitude of the thing is a consideration." Faulkner obtained from the appellee the loan of two thousand dollars by false representations; he thereby placed himself under a moral obligation which did not rest upon his firm, for he alone, and not his co-partners, made the false statements, and he has repeatedly recognized the fact, and promised to make good his dere-

liction, which he did as far as he reasonably could, by assigning said policy to the appellee.

The second and third propositions necessarily involve much the same consideration, and may properly be treated together.

The policy declares that upon the death of the insured there shall be payable "to his legal representatives," the sum of fifteen hundred dollars, and the appellants' contention is, that the precise form of policy as the one in the record, was passed upon by the Court of Appeals of New York, in *Griswold vs. Sawyer, et al.,* 125 *N. Y.,* 411, when the Court held that such a policy can only be assigned by the consent of the beneficiaries named therein, and that the term, *"legal representatives"* as employed in the policy, means the children or heirs-at-law of the deceased. The decision in this case reverses, 8 *N. Y. Supp.,* 517, and ANDREWS and GRAY, J.J., dissent, and is a case where the aged and heavily indebted father of a family, dependent on him for support, takes a policy of insurance upon his life, payable to his "legal representatives." The Court held that it was payable to his wife and children, as it would be presumed that under the circumstances the *insured intended* to describe them by that term, rather than his "executors or administrators." Now in this case if we are to resort to inference or presumption to ascertain what Faulkner's intentions were in taking out this insurance upon his life, and to what uses he intended to apply the same, it is only necessary to examine the testimony in the record to ascertain that his sole object was to reimburse the appellee the amount which he had paid. But this policy must be considered not in segregated parts but as a whole, in order that a proper understanding of its meaning may be arrived at. Whilst the words "legal representatives" have a well recognized meaning in the law and ordinarily siginify

executors or administrators, and they will always be given this meaning, unless it can be seen that they were used in a different sense. If the holder of this policy was intended to be an exclusive holder, without power of assignment, then the provisions contained in the seventh condition of the policy, already quoted, should have been omitted, as in its present terms it is grossly misleading. Both the insured and the insurer have construed this contract of insurance to be assignable, as Faulkner actually assigned all his interest therein to the appellee, and the insured has endorsed thereon its assent to the same.

This Court in *New York Life Insurance Co. vs. Flack*, 3 *Md.*, 341, has passed upon this question, and the Supreme Court of the United States, in *New York Mutual Life Ins. Co. vs. Armstrong*, 117 *U. S.*, 591, affirming the doctrine of the above Maryland case, which it in terms approves, says: "The term 'legal representatives' is not necessarily restricted to the personal representatives of one deceased, but is sufficiently broad to cover all persons who, with respect to his property, stand in his place, and represent his interests, whether transferred to them by his act, or by operation of law. It may in this case include assigns, as well as executors and administrators." *Lodge vs. Weld*, 139 *Mass.*, 504; *Price vs. Strange*, 6 *Madd.*, 159.

Other questions of minor importance, but in no sense controlling the determination which we think should be made of this case, have been brought to our attention, but we forbear further discussion, as we entertain no doubt as to the correctness of the decree passed by the Court below, which must be affirmed.

*Decree affirmed.*

(Decided 21st June, 1893.)