## J. MILTON LYELL, ASSIGNEE, *vs.* MARY A. WALBACH.

*Contracts of Married Woman Before the Act of 1898—Promise to Pay Unenforceable Claim After Removal of Disability—Moral Obligation as Consideration.*

Before the passage of the Act of 1898, Chap. 457, all the contracts of a married woman, except in a few specified instances, were void. At that time goods were sold to the defendant, a married woman, for which she paid in part, and afterwards acknowledged the existence of an indebtedness for the balance. In an action to recover the same, *held,* that the defendant is not liable on the original contract of purchase, because she was then without power to bind herself by such contract.

*Held,* further, that since that contract was void, there was no consideration for her promise to pay, made after the removal of her disability by the Act of 1898, and that consequently the plaintiff is not entitled to recover.

A merely moral obligation, unenforceful at law or in equity, is not such a consideration as will support a subsequent express promise.

*Decided June 23rd, 1910.*

Appeal from the Superior Court of Baltimore City (SHARP, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS and URNER, JJ.

*J. Milton Lyell,* for the appellant.

*Leigh Bonsal,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This case is before us on a second appeal. The first appeal is reported in 111 Md. 610 and the questions of law on ·the pleadings were established on that appeal. A judgment of the Superior Court of Baltimore City in favor of the defendant was there reversed, with costs, and the case was remanded for a new trial.

The case is now before us upon its merits, and the questions are presented by a single exception to the rulings of the Court upon the prayers.

The Court below, at the close of the testimony, refused all of the plaintiff's prayers, and granted the defendant's prayer, that there was no evidence legally sufficient for the plaintiff to recover, and that their verdict must be for the defendant and this action of the Court forms the basis of the plaintiff's appeal from the judgment so entered on the ver· dict.

The suit was brought by the plaintiff on the third day of February, 1909, in the Superior Court of Baltimore City, as assignee for the benefit of creditors of W. Jeff Adams, trading as W. Jeff Adams & Co., against the defendant, Mary A. Walbach, wife of John DeBarth Walbach, deceased, to recover a balance of $784.82 alleged to be due by her on an account stated between them.

The declaration as amended contained two counts, but the cause of action is fully set out and stated in the second count and it is as follows: "And for that the said W. Jeff Adams and a certain Henry V. Waltjen, trading as W. Jeff Adams & Company, during and about the years 1896, 1897 and 1898, at the request of Mrs. Mary A. Walbach, otherwise known as Mrs. John DeB. Walbach, sold and delivered to the defendant quantities of meat, game, vegetables and other goods and merchandise generally known as "green groceries," on account of which the defendant made sundry payments, until the amount due by her to the firm of W. Jeff Adams & Company upon account stated amounted on the 11th day

of November, 1907, and sometime prior thereto, to the sum
of seven hundred and eighty-four dollars and eighty-two
cents ($784.82) (not including any interest thereon) ; that
prior to the 11th day of November, 1907, the defendant ad-
mitted to W. Jeff Adams and to John E. Hood, then clerk
and salesman for the W. Jeff Adams & Company, the correct-
ness of the amount of seven hundred and eighty-four dollars
and eighty-two cents ($784.82), due .and owing by her, as
shown by the account stated, and her liability thereon, and
promised to pay the same; that on or about the 11th day of
November, 1907, Henry V. Waltjen duly assigned unto W.
Jeff Adams all of his right, title and interest in the business
of W. Jeff Adams & Company, and from and after the date
W. Jeff Adams conducted the business in the same firm
name, until he assigned the same, with all the assets there-
of, to J. Milton Lyell, trustee, for the benefit of creditors, on
or about the 28th day of May, 1908; that in the year 1908,
prior to the 28th day of May, 1908, the defendant again ad-
mitted the sum to be due and owing by her, and promised to
pay the same upon the death of her mother, Mrs. Priscilla
G. Savin; that Priscilla G. Savin, mother of the defendant,
has since departed this life, and the defendant has been re-
quested to pay the amount of seven hundred and eighty-four
dollars and eighty-two cents ($784.82), due by her, but has
not paid the same.

It will not be necessary for us to discuss the evidence in
detail for the purpose of disposing of the legal questions
raised on the record, or to attempt to reconcile the conflict-
ing statements of the witnesses who testified in the case.

The record shows that in the course of the trial the plain-
tiff offered evidence tending to prove the facts set out in the
second count of the declaration, while, on the other hand,
the evidence upon the part of the defendant was in strict
denial and in direct conflict with that offered by the plain-
tiff, and tended to sustain the defense interposed by the de-
fendant.

The undisputed testimony is that the defendant was a married woman at the time of the alleged sale of the goods to her, and that the firm of W. Jeff Adams & Co. was fully advised of this fact. There may bo conflict in the testimony as to the precise date of the dealings, but it is not disputed that all of the sales were prior to the first day of January, 1899, the date on which the law relating to the ability of married women to contract became effective in this State. The Act of 1898, Chapter 457, was approved on the 9th of April, 1898, but did not take effect until on or after the first day of January, 1899.

According to the plaintiff's testimony, the last sales were made on or about the month of July, 1896, and the defendant sometime in the month of November, 1907, admitted the account as stated, and promised to pay it, when her mother died and when she came into possession of her money.

The defendant in her testimony denied the indebtedness and the alleged promise to pay it, and testified that she had no dealings with the firm from December, 1893 to 1900, that the alleged account was a debt due by her husband, who was living at the time, and who paid the household expenses until 1896, and she was not responsible for his debts, that she had no separate estate and did not unite in any written obligation with her husband to pay the debt.

The sole question then is, can the defendant, a married woman, assuming the plaintiff's theory of the case to be correct, be held liable in this action. Manifestly, she would not be liable if it was her husband's debt, because the alleged promise to pay the debt was not in writing as required by the Statute of Frauds, and such a promise would be void and unenforceable.

It is very clear that prior to the Act of 1898, Chapter 457, the contracts of married women, in this State, were void at law and in equity, except in those instances where her common law powers of contracting were changed and en-

larged by statute.  Art. 45, *Code Public General Laws,* Vol. 2, page 1274.

There is nothing in this case to take it out of the common law rule relating to the disabilities of a *feme covert,* or to bring it within any of the existing statutory exceptions or modifications prior to the Act of 1898, Chapter 457.  Act of 1882, Chap. 265 (Earnings); Act of 1892, Chap. 590 (Boarding House Keeper); *Poffenberger* v. *Poffenberger,* 72 Md. 321; *Wolf* v. *Baureiss,* 72 Md. 478; *Wolf* v. *Frank,* 92 Md. 142.

But by section 5, Chapter 457 of the Acts of 1898, a complete change was effected in the law as to the liability and the capacity to contract, of married women, in this State. This section (5) provides, that married women shall have power to engage in any business and to contract, whether engaged in business or not, and to sue upon their contracts * * * as fully as if they were unmarried; contracts may also be made with them and they may also be sued separately, upon their contracts, whether made before or during marriage, as fully as if they were a *feme sole,* etc., etc.  And by section 20, of the same Act it is provided that, nothing shall be construed to relieve the husband from liability for the debts, contracts or engagements which the wife may incur or enter into upon the credit of her husband or as his agent, or for necessaries for herself or for his or their children, but as to all such cases his liability shall be and continue, as at common law.

Now, it appears from the undisputed evidence that all of the goods and merchandise, claimed in this suit, were sold before the Act of 1898 was effective, and when the defendant was under the disability of coverture, her legal status, at that date.

So conceding without deciding for the purposes of the case that she contracted the debt at the time alleged and testified to by the plaintiff, she clearly would not be liable on the

contract, and the defense of coverture becomes a good bar
and answer to the suit.

But it is insisted, upon the part of the appellant, that
since the Act of 1898, which removed the wife's disability,
the defendant admitted the debt, and promised to pay it, as
set out in the account stated and as stated in the declaration.
Now assuming that the evidence was legally sufficient to sus-
tain this contention, although it is absolutely denied by the
appellee, we are brought to the question, was there such a
valid and sufficient legal consideration to support this prom-
ise as to permit a recovery against her in this case.   In
other words, was there a sufficient legal consideration to sup-
port the express promise to pay which the defendant is al-
leged to have made after her disabilities were removed, and
to be enforced against her.

In *Ingersoll* v. *Martin,* 58 Md. 67, this Court said: It
may be conceded that there was a moral obligation to pay
the debt in full, notwithstanding the technical release, and
yet a mere moral obligation simply would not be sufficient
legal foundation for the promise.   The general statement,
used by LORD MANSFIELD, in *Hawkes* v. *Saunders,* Cowper,
289, said JUDGE ALVEY, is now understood, both in Eng-
land and in this State, as being so restricted as not to apply
or extend to that class of cases which arise out of the moral
duties or affections alone.   There must be something to sup-
port an express promise to pay.   *Ellicott* v. *Peterson,* 4 Md.
492; *State, use of Gott,* v. *Barnard,* 44 Md. 341; *Yates* v.
*Hollingsworth,* 5 H. & J. 216; *Eastwood* v. *Kenyon,* 11 Ad.
& El. 438.

In the case of *Linz* v. *Schuck,* 106 Md. 230 (a recent
case), CHIEF JUDGE BOYD, in a very clear and forcible opin-
ion after reviewing the previous cases upon this subject, at
some length, said, the rule as announced, in *Ingersoll* v.
*Martin,* must be accepted as the law of this State on that
subject.   The decisions of *State* v. *Reigart,* 1 Gill, 1; *Drury*
v. *Briscoe,* 42 Md. 154 and *Robinson* v. *Hurst,* 78 Md. 69,

were considered, and in so far as the statements in those cases conflicted with *Ingersoll* v. *Martin, supra,* were overruled and the doctrine asserted in *Ingersoll* v. *Martin, supra,* was affirmed.

We are of opinion, after a careful consideration of the authorities, that the promise to pay the debt in this case is not supported by a sufficient legal consideration to make it binding on the wife.

It is well settled by all the well-considered cases that the contracts of a married woman, being void, cannot be revived in this way. Whatever may be the decisions elsewhere, and there are undoubtedly conflicting opinions, we cannot give our assent to the appellant's contention in this case. The subject is discussed in 6th Vol. of *A. and E. E. of Law,* page 681, and the authorities are there collected and cited. The distinction between contracts that are void and those that are voidable is discussed, and it is there said, supported by a number of citations: "Where, however, the original contract is absolutely void, as for instance a debt contracted by a married woman, there is no such legal foundation for the moral obligation as will support her promise to pay the debt after her discoverture."

In *Watkins* v. *Halstead,* 2 Sandford (N. Y.) 311, where goods were sold to a married woman during coverture and a promise made by her after a divorce to pay for them, it was held the promise was not supported by a proper consideration, and was void. The Court said: "In a note to *Wennall* v. *Adney* (2 Bos. & Pul. 252) the rule as to what precedent consideration will support an express promise is laid down with a precision and accuracy that have commended it to repeated judicial approbation. It is there said that an express promise can only revive a precedent good consideration which might have been enforced at law through the medium of an implied promise, had it not been suspended by some positive rule of law; but can give no original right of action, if the obligation on which it is founded never could have been

enforced at law, though not barred by any legal maxim or statute provision. This rule was approved by JUSTICE SPENCER in *Smith* v. *Ward,* 13 John. 257; by BRONSON, J., in *Eyle* v. *Judson,* 24 Wend. 97, and by LORD DENMAN, in *Eastwood* v. *Kenyon,* 11 Adol. & Ellis, 438. Tested by this rule, this promise must surely fail. The precedent consideration relied upon never could have been enforced through the medium of an implied promise, because, first, the wife was incapable at the origin of the consideration of making a valid promise; and, second, the goods in contemplation of law were sold on the credit of another (her husband). The original promise, whether express or implied, on the sale of the goods, when the defendant was under coverture, was altogether void."

In *Valentine* v. *Bell,* 66 Vermont, 280, the Court said: "But the plaintiff claims that he can recover on defendant's promise made since the passage of the Act that she would pay for keeping the child while she was covert of Minor and while she was sole. But as the promise made while she was covert of Minor was void, both at law and in equity, it constitutes no consideration for the subsequent promise to perform it  It amounts to no more than this, that, being liable, she promised to pay. Such a promise without more is null and affords no ground for an action. It left the debt and the parties as they were before." *Hayward* v. *Barker,* 52 Vt. 429.

In the case of *Littlefield* v. *Shee,* 2 B. and Ad. 811, where the plaintiff furnished goods to the defendant while she was a *feme covert.* living apart from her husband, and after his death she promised to pay for them, it was held that, as the price of the goods originally constituted a debt from the husband, and not from the defendant, there was not a sufficiently precedent legal obligation to constitute the defendant's moral obligation a sufficient consideration. *Waters* v. *Bean,* 15 Ga. 358.

The case of *Lee* v. *Muggeridge,* 5 Taunt. 36, relied upon by the appellant to sustain a contrary doctrine, was vigorously condemned in *Watkins* v. *Halstead, supra,* and in *Dixie* v. *Worthy,* 11 Upper Canada Queen's Bench, 338, it was said it had been in effect overruled.

The cases of promises to pay debts barred by limitations, debts discharged by the operation of the bankrupt law, a debt contracted by an infant and the like are voidable con tracts and rest upon a different rule and principle, and need not be considered by us. *Webster* v. *LeCompte,* 74 Md. 250.

It follows from what we have said that the judgment must be affirmed.

There was no error in rejecting the plaintiff's prayers, and the defendant's prayer withdrawing the case from the jury and directing a verdict for the defendant was properly granted. In this view of the case, it is not necessary for us to discuss the other questions presented on the record in dis posing of the case.

*Judgment affirmed, with costs.*