NEW JERSEY TRUST AND SAFE DEPOSIT COMPANY v. NATIONAL GAS AND CONSTRUCTION COMPANY.

Argued February 18, 1904—Decided June 13, 1904.

When one who has contracted in writing to do certain work learns that the other contracting party places on the writing a construction differing from what the first party really intended, and on that ground in good faith refuses to prosecute the work, his consent to proceed without further objection is a legal consideration for an agreement between the parties to modify the written contract.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices DIXON, GARRISON and SWAYZE.

For the plaintiff, *Howard Carrow* and *William J. Kraft.*

For the defendant, *Beldon & Leaming.*

The opinion of the court was delivered by

DIXON, J.    This suit was brought to recover the sum due on the acceptance of the following order:

"PHILADELPHIA, March 3d, 1902.

*"National Gas and Construction Company,* 112 *North Broad Street, Philadelphia.:*

"GENTLEMEN—Please pay to Mr. George Pfeiffer, Jr., on the completion of his contract with you for the construction of the sewer plant at Burlington, New Jersey, in accordance with the terms of the contract and to your satisfaction, the sum of four thousand nine hundred and eighteen and six one-hundredths ($4,918.06) dollars, in addition to whatever amount may be due him under your present construction and interpretation of the contract between you, and also in addition to whatever sum may properly be due him for extra work in the construction of said plant; provided, the total amount paid to George Pfeiffer, exclusive of the amount due for extra work, does not exceed the sum of fifty-six thousand six hundred and fifty-one and fifteen one-hundredths ($56,-651.15) dollars.    This order is, however, not to be valid or to warrant such payment unless and until the said sewer shall be completed in accordance with the terms of. said contract and delivered by said Pfeiffer free of all liens and encumbrances, according to the terms of the contract.

"LANDSDOWNE CONSTRUCTION CO.,

[L. S.]                 "SAMUEL C. KENT, *President.*

"Accepted when properly executed.

"NATIONAL GAS AND CONSTRUCTION CO.,

"By Jos. S. KEEN, JR., *President."*

The order was assigned by the payee to the plaintiff a day or two after its date.

At the trial in the Camden Circuit the plaintiff obtained a verdict, which the defendant now seeks to have set aside.

The first position assumed by the defendant is that nothing ever became due upon the order, and in support of that we are referred to a stipulation made at the trial, to the effect that the defendant had paid Pfeiffer $56,651.15 "on account of the contract of August 30th, 1901," which is the contract mentioned in the order.

But this stipulation is not conclusive on the real question involved. It appears that a dispute arose between the defendant and Pfeiffer as to their rights under the contract between them dated August 30th, 1901, their difference being thus described by the defendant's chief engineer, Mr. Ledoux: "I interpreted the contract according to the quantities in the contract itself and the prices in the contract itself. Senator Pfeiffer claimed that his bid was based on some other quantities which he ought to have had put into the contract, but which he made a mistake in not having put in." To settle that dispute the present order and acceptance were given, and its terms cover such sum, not exceeding $4,918.06, as, when added to "whatever amount may be due to him [Pfeiffer] under your [the defendant's] present construction and interpretation of the contract," would make the sum of $56,651.15. Hence the inquiry is not what came due or was paid on the contract, but what came due on the defendant's construction of the contract. Respecting this the testimony offered by the defendant is clear. Mr. Ledoux testified that he never changed his interpretation of the contract, but that as the basis of settlement he allowed "the full amount of the contract price and also the amount of that agreement," meaning the order in suit. His final estimate, an exhibit in the cause, states as the amount due on the contract the sum of $51,-792.51, and "by agreement made March 3d, 1902, $4,918.06," making a total of $56,710.57. The difference between this and the limit set in the order ($56,651.15) has not been the subject of comment, and need not be further noticed by us. Mr.

Hodge, the defendant's secretary and assistant treasurer, also testified that the sum paid to Pfeiffer included what was due under the order. This evidence makes it plain that $4,918.06 came due *on the order,* and hence, under Pfeiffer's transfer, belonged to the plaintiff. Consequently, if the defendant was notified of the plaintiff's title before the money was paid to Pfeiffer, the defendant became bound to pay the plaintiff that sum.

Pfeiffer claims that there is still owing to him from the defendant about $5,500, but the defendant insists that it made a final settlement with him about July 21st, 1902, when he was paid about $13,000. In either case, notice given before July, 1902, would bind the defendant.

Pfeiffer testified that he told the defendant's president, assistant treasurer and chief engineer of the assignment a few days after it was made, and one of those officers swore that no such information was given to him and the other two swore that they had no recollection of it. In response to a special interrogatory submitted to the jury by the trial justice, the jury returned a finding that notice of the assignment was given before the second week of March, 1902. We think the nature of the evidence would not justify us in overturning this conclusion of the jury.

Counsel for defendant further insist that even if they were obliged to pay the plaintiff, yet Pfeiffer, by his own evidence, is shown to have been authorized by the plaintiff to receive the money for it, and hence the payment to him about July 21st, 1902, satisfied the present claim. But Pfeiffer's evidence on this point clearly refers to a time after that date, and to a demand for payment, which was refused. The payments made up to and including that date were certainly not made to nor received on behalf of the plaintiff.

Lastly, it is urged that the order and acceptance were void for want of consideration. But there manifestly was a legal consideration. The settlement of the dispute, Pfeiffer's consent to go on with the work, which he had avowed a determination to abandon unless adjustment was made, were valid

grounds for a modification of the contract, if this order introduced any. modification; and, if it did not, the contract itself was sufficient consideration for this instrument. It is not shown that Pfeiffer's contention as to the real bargain was set up in bad faith, and he might have resorted to a suit in equity for reformation of the written contract. The law afforded the defendant no means of compelling Pfeiffer to prosecute the work on the terms of the writing; it could only give a pecuniary compensation for refusal, and, under these, circumstances, for the parties to settle their controversy by mutual concessions was clearly lawful.

The rule to show cause should be discharged.