## JOHN LINZ *vs.* ALBINUS SCHUCK.

*Contracts—Consideration—Promise of Extra Pay to one who Refuses to Complete Contract—Substituted Agreement—Evidence.*

When one of the parties to a contract for the doing of certain work for a stipulated sum refuses, after part performance, to go on with the work, on account of substantial difficulties not foreseen at the time the contract was made, which would increase the cost of performance, a promise by the other party to pay an additional sum if the contractor will finish the work is enforceable.

In such case, it is not necessary that the original contract should be expressly rescinded, but the effect of the promise of extra pay and its acceptance is to substiiute a new and modified contract for the original agreement.*

A merely moral obligation is not a consideration to support a promise.

When defehdant promised a contractor for digging a cellar to pay, in addition to contract price, the extra cost of construction arising from the fact that soft mud was encountered under a crust of earth, evidence as to the sum paid by the contractor on this account is admissible in an action to recover the extra compensation.

In such action, evidence is also admissible to show that certain payments made by the defendant were intended for a certain part of the work, and also to show the nature of the soil where the cellar was to be made.

*Decided June 24th, 1907.*

Appeal from the Superior Court of Baltimore City (ELLIOTT, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*W. W. Parker* and *John R. M. Staum* (with whom was *Augustus M. Denhard* on the brief ), for the appellant.

The main point upon which this case turns is whether or not Schuck was legally compelled to perform his original contract to dig Linz's cellar.

Whether Schuck could abandon the work he agreed to per-

---

*The promise of additional compensation for completing an executory contract is the subject of a note appended to this case as reprinted in 11 L. R. A. N. S. 789.

form ; then by stress of circumstances and conditions compel Linz to pay him more money before consenting to perform that which he had bound himself by solemn contract to do for a specified sum.

Whether Linz's promise (according to plaintiff's testimony) to Schuck to pay him an additional sum other than that named in the contract can be held to be a good and valid promise based upon a good and legal consideration so as to form a new contract between the parties whereby Schuck bound himself to do that which he had already undertaken by solemn contract to do.

The test of the whole matter is to find out after the work had been performed, just what work Schuck *did actually perform.*

The most patent and pertinent fact is that Schuck dug a cellar for Linz and the kind of cellar, the way it was dug, the way the walls are claimed to have been underpinned, and all the circumstances and conditions surrounding the finished cellar are similar in every respect to the stipulations of the original contract.

When the cellar had been completed Schuck had then only performed the same work which he had agreed to do in his original contract.

The sole difference is that under the original contract Schuck was to be paid a specific sum, and under the allegation that Linz "promised something" in addition thereto, he was to get a greater sum. Can this be permitted under the law ?

Can a man contract to do a thing, then abandon his contract and by stress of the inexorable circumstances which he, *himself*, has brought about, compel his contractee to pay a greater sum whenever he happens to have made a contract with which he is not satisfied ?

The general rule is that if a contract fixes the right of a person working on a building, any promise to pay him extra for doing what the contract binds him to do is without consideration and void. 6 *Am. & Eng. Enc.*, 752; *Ayers* v. *Chicago*

*R. R. Co.*, 52 Iowa, 478; *Fertman* v. *Parker*, 10 Ind. 474; *Lingenfelder* v. *Wainwright Brew. Co.*, 103 Mo. 579; *Erb* v. *Brown*, 69 Pa. St. 216; *Cobb* v. *Cowdery*, *&c.*, 40 Vt. 25; *King* v. *D. M. & N. R. R. Co.*, 61 Minn. 482; *Vanderbilt* v. *Schreyer*, 91 N. Y. 392; *Robinson* v. *Jewett*, 116 N. Y. 40; *Keith* v. *Miles*, 39 Miss. 442; *Chitty on Contracts* (14 ed.), pp. 23 and 24; *Eastman* v. *Jackson*, 75 Mont. 357; *Rooney* v. *Thompson*, 84 N. Y. St. 263; *Reeves Pulley Co.* v. *Jewell Belting Co.*, 102 Ill. Ap. 375; *Allen* v. *Plasmeyere*, 90 N. W. 1125 (Neb.); *Wendling* v. *Snyder*, 30 Ind. Ap. 330; *Alaska Packers Assn.* v. *Domenico*, 117 Fed. 99; *Barranger* v. *Ryder*, 93 N. W. 56 (Iowa); *Wear Bros.* v. *Schmelzer*, 92 Mo. Ap. 314. Note to *Abbott* v. *Doane*, 34 L. R. A. 33.

In the case 92 Mo. Ap. 314, the facts are almost identical with the case at bar, and the conclusion there reached is most applicable to this case.

In fact, if a man makes an absolute contract without protecting himself, and it is to be presumed that when Schuck made the investigation which disclosed water under the house as a builder of twenty years experience he knew what he was doing when he signed an absolute contract, the loss occurring such as the circumstances of this case disclose is thrown upon the promisor. *Penna. R. R. Co.* v. *Ricchert*, 58 Md. 261; *So. Bld. Asso.* v. *Price*, 88 Md. 156 (163); *Benglesdorf* v. *Hanway*, 90 Md. 220 (219); *Dermott* v. *Jones*, 2 Wal. 1 (7).

The contract was absolute, the loss was Schuck's loss. Linz is not in any manner responsible for the same, and if Schuck forced Linz to promise an additonal compensation, or if Linz, in order to get Schuck to do what he had originally agreed to do, voluntarily promised an additional compensation such promise is a *nudum pactum.*

Under this view of the well established law all evidence concerning the making of an additional promise should have been excluded and the defendant's motion to that effect should have been granted as well as the defendant's prayers instructing the jury of a failure of evidence to establish any greater liability than that specified in the original contract.

At the trial below plaintiff introduced a bill of particulars to prove his claim which had been made up from lumber bills and delivery tickets, but the men who made the bills, the men who made the tickets, the man who made the bill of particulars were not produced to prove any of these things or the correctness of the items, yet the bills and the bill of particulars were permitted to go into evidence to prove the plaintiff's case. Clearly this violates the basic rule of evidence, the best evidence was not given of these things. Schuck should not have been permitted to prove either the bills or the bill of particulars. *Thomas* v. *Price*, 30 Md. 483.

*B. H. Hartogensis* and *Wm. C. Smith*, for the appellee.

The principal controversy in this appeal, ranges itself around the substitution of a new contract entered into after unforeseen difficulties had arisen in the performance of an old one and while the old contract still remained executory at least in part.

The appellee urges (1) that the parties were at liberty to rescind the old contract while still executory ; (2) that a new one might be substituted for it by parol agreement ; (3) that no new superadded consideration for the new agreement even for a larger sum was needed to bind the contract.

The unforseen difficulty here was :

(1) "We got into a swamp like the bottom of an old creek," a difficulty unexpectedly met in excavating the cellar. It was marshy tidewater soil.

(2) The act of Building Inspector Preston in forbidding the continuance of the work.

(3) The work was abandoned all summer, the best time for building operations. Schuck refused to go on with the work.

(4) But Linz wanted a cellar ; the house was no good to him without this cellar.

(5) That was what he wanted and when the contract was abandoned and the performance of it waived, he was determined to get it whatever the cost.

(6) And then he entered into the new parol agreement to pay what the work of excavation would cost.

This is the theory of the plaintiff's fifth prayer granted by the Court, and on it the jury was justified amply in finding its verdict. *King* v. *Duluth R. R. Co.*, 61 Minn. 482; *Brantly, Conts.*, 69.

"Parties agreed to build a house for a definite price. The house began to settle. There was a conflict of evidence as to whether it was the builder's fault. The city authorities next removed part of the earth from about the houses, and the owner made a new promise for an additional payment. Held that the new and supplemental agreement was for a valid consideration and was binding." *Cooke* v. *Murphy*, 70 Ill. 96 ; see cases in 34 L. R. A. 38 and 40.

After a sealed agreement was made for an inadequate price, and part of the work done, plaintiff refused to proceed, but upon a parol promise by the defendant that he should be paid for his labor and materials, and should not suffer, he went on and finished the building. It was held that the first contract was waived and that he was entitled to recover upon a parol promise. *Munroe* v. *Perkins*, 9 Pick. 298; 6 *Am. & Eng. Ency.*, 754.

It is competent for the parties to a written agreement to change or modify the same, and thus by new conditions not in writing to waive, add to, or qualify its terms. And where reciprocal rights are granted or concessions made by both parties under the parol modifications and have been acquiesced in by each, the new arrangement will be sustained. *Youngberg* v. *Lamberton*, 91 Minn. 100.

While mere inadequacy of contract price is not sufficient to make a new arrangement possible, some excusable mistake of fact is. *King* v. *Duluth R. R. Co.*, 61 Minn. 488; *Michaud* v. *MacGregor*, 61 Minn. 479; 9 *Cyc.*, 352.

In the *Michaud-MacGregor case, supra*, the unforeseen obstacles were rocks, of the existence of which both parties were ignorant. In *Meech* v. *City of Buffalo*, 29 N. Y. 198, the unforseen difficulty was a quicksand. In *Hart* v. *Lauman*, 29 Barb. 410, the contractor met unexpectedly hard material in excavating; he stopped work several weeks, but resumed

under a new agreement to be compensated in addition. The rescission was held valid, and the new agreement sustained. See also *Goebel* v. *Linn*, 47 Mich. 489.

Where the contract is executory on both sides, parties are at liberty to rescind it by substituting a new contract therefor. *Brantly*, *Contract*, 70 and 194. And here by their dealing with each other they have made a new contract. *Orem* v. *Keelty*, 85 Md. 337; see p. 346.

In *Greenleaf on Evidence* it is said to be well settled that in case of a simple contract in writing, oral evidence is admissible to show that by a subsequent agreement, the time of performance was enlarged or the place of performance changed, or that the agreement itself was waived or abandoned; also that it is competent to prove an additional supplementary agreement by parol, by which something is supplied not in the contract. Cited and approved in *Coates* v. *Sangston*, 5 Md. 131; *Allen* v. *Sowerby*, 37 Md. 411.

Boyd, J., delivered the opinion of the Court.

The appellee sued the appellant on the common counts for a balance claimed to be due for work done and materials provided, etc., under the following circumstances: The appellant owned a house known as No. 3038 Elliott street, at the corner of Canton street in Baltimore City, which was built without a cellar, was not plastered or partitioned off on the second story, and the rear was arranged for a stable. The appellee entered into a contract in writing with the appellant which states: "Cellar to be dug under the entire store to the partition wall between kitchen and store to a depth of 7 feet, and walls to be underpinned with good hard brick laid in cement. * * * cellar to be connected with sewer and cemented," and provides for work to be done in the kitchen, the second story of the house and a number of other things not necessary to mention. It concludes, "I will do the work and furnish material for the sum of fifteen hundred dollars ($1,500)." The paper was drawn in the shape of an estimate or bid, but was

accepted by the appellant and the appellee identified it as his contract.

The appellee began the work in April, 1903. He gave the contract to build the cellar to a sub-contractor who started to excavate. The appellee thus described the conditions of the ground: "The house stood on a hard crust about three feet thick and the foundation of that house didn't extend through that hard crust, it was built on that crust and the more we got through that the more we got into a swamp, like the bottom of an old creek, black, muddy stuff and soft and they tried to dig and dig and it all ran into this place and finally a big lump would cave off and fall in every now and then and they continued on that way to get a trench dug to connect the cellar with the sewer so we thought we could drain the place a little." His foreman notified him that the house was cracking, and he then got lumber and drove "lagging" in to hold the ground. He testified that he notified Mr. Preston, the Building Inspector of the city, who went there with one of his assistants; that they "took sticks and shoved them down in the ground about fourteen feet deep, that Mr. Linz was present upon this occasion.". He also said that Mr. Preston told him no cellar could be made and he should fill in what he had taken out and he stopped the work. He further testified that the appellant called on him "off and on" and wanted to see "whether we couldn't make a cellar there; wouldn't it be possible in some way to overcome it even if a small cellar." They finally thought they "could make a little cellar to get some cellar there," and he said "let the thing lay and we will drain the ground into the sewer and may be we can overcome it provided you pay the additional cost and stand the consequences." He demanded a writing from the appellant and he said "his word was as good as mine, and if I put a cellar there he would see that I got pay for it; that he would pay for the additional work I was compelled to do to make a cellar." In another place he stated; "He says if I was able to get a cellar under there he would reimburse or pay me the additional cost, whatever it was, to get a cellar there; that the

house was no good to him without a cellar." In October he went to work again, dug out eight feet, then drove poles down eight feet long, used "concrete and cement in there to form our footing" and went to great expense and trouble to make the cellar, under the new arrangement.

The appellant introduced evidence which tended to show that some of the trouble about the cellar was owing to the negligent way in which the appellee's men did the work, and that the bad condition of the soil did not extend as deep as the appellee said it was, but there can be no doubt that the conditions were altogether different from what appeared on the surface or what was anticipated. The appellee also testified that before he made the offer he "wanted to know how the ground was and defendant took plaintiff in the cellar of his building" (which was on the opposite side of the street) "and he showed me he had a cellar dug there and it went all right, and the soil was nice and sound there on the other corner, and when I started I wouldn't have any trouble, and I made my figures on his say so." After the work was begun, the owner of the adjoining property sued the appellant and the appellee for damages to her house sustained by reason of the excavation, and the suit was compromised by the appellant buying the house and the appellee agreeing to put it in proper condition. That was No. 3036 Elliott street.

The principal question in the case is whether the plaintiff was entitled to recover for the additional costs and expenses incurred, by reason of those conditions, on the promise of the appellant to pay him for them. The precise question for our consideration is presented by the plaintiff's fifth prayer, which was granted. After referring to the written contract made in April or May, 1903, and the refusal of the plaintiff in June, 1903, to perform and complete said contract, the prayer further submitted to the jury to find whether "said refusal on the part of the plaintiff was induced by *substantial and unforeseen difficulties* in the performance, which would cast upon the plaintiff *additional burden not anticipated by the parties when the contract was made,* and if they further find that after said refusal

by the plaintiff, the defendant to induce the plaintiff to resume the work thus abandoned promised him to see him through and to stand the consequences, and that relying upon said promise the plaintiff completed the work, then their verdict may be for the plaintiff," etc.    That prayer seems to have followed quite closely the language used in *King* v. *Duluth M. & N. Ry. Co.*, 61 Minn. 487 (s. c. 63 N. W. 1105), which case, notwitstanding unfavorable criticism by some writers, in our opinion announces a principle which is not only just and equitable, but is easily reconcilable with the general rule that a promise to do, or actually doing, that which a party to a contract is already under legal obligation to do, is not a valid consideration to support the promise of the other party to the contract to pay additional compensation for such performance.    In *King* v. *Duluth*, after stating that general rule, it is added: "In other words, a promise by one party to a subsisting contract to the opposite party to prevent a breach of the contract on his part is without consideration."    The Court then cited *Ayers* v. *R. R. Co.*, 52 Iowa, 478; *Linginfelder* v. *Brewing Co.*, 103 Mo. 578; *Vanderbilt* v. *Schreyer*, 91 N. Y. 392, and other cases, most of which are among those relied on by the appellant, as sustaining and illustrating the general rule which the Supreme Court of Minnesota unhesitatingly and emphatically approved of.    Indeed the Court said that the doctrine of *Monroe* v. *Perkins*, 9 Pick. 305; *Goebel* v. *Linn*, 47 Mich. 489; *Rogers* v. *Rogers*, 139 Mass. 440; *Bryant* v. *Lord*, 19 Minn. 396, and *Moore* v. *Locomotive Works*, 14 Mich. 266, *as it is frequently applied*, did not commend itself to their judgment or sense of justice. Those are some of a number of cases which have sustained actions for additional compensation on various theories—some on the ground of waiver, others on the ground that the party for whom the work was done had the election of suing the other party for damages for breach of contract or to make a new contract, and others that it was a modification of the original contract, etc.    CHIEF JUSTICE START, of the Minnesota Court, in the course of the opinion, said: "It is entirely com-

petent for the parties to a contract to modify or waive their rights under it and ingraft new terms upon it, and in such a case the promise of one party is the consideration for that of the other; but where the promise to the one is simply a repetition of a subsisting legal promise there can be no consideration for the promise of the other party, and there is no warrant for inferring that the parties have voluntarily rescinded or modified their contract. But where the party refusing to complete his contract does so by reason of some unforeseen and substantial difficulties in the performance of the contract, which were not known or anticipated by the parties' when the contract was entered into, and which cast upon him an additional burden not contemplated by the parties, and the opposite party promises him extra pay or benefits if he will complete his contract, and he so promises, the promise to pay is supported by a valid consideration. In such a case the natural inference arising from the transaction, if unmodified by any equitable considerations, is rebutted, and the presumption arises that by the voluntary and mutual promises of the parties their respective rights and obligations under the original contract are waived, and those of the new or modified contract substituted for them. Cases of this character form an exception to the general rule," etc. The opinion then goes on to say that on the other hand when there are no unforeseen additional burdens, which make the refusal to perform, unless promised further pay, equitable, and such refusal and promise of extra pay are one transaction the promise is without consideration and the case is within the general rule. It then holds that what unforeseen difficulties and burdens will make the refusal to perform equitable, so as to bring it within the exception to the general rule, must depend upon the facts of each particular case.

We have thus referred to, and quoted from, that case at unusual length because the principles therein announced seem to us to be, not only well and clearly stated, but just, and founded on reasons that any Court of justice should hesitate to reject, unless they conflict with some binding authority or

established rule of law, which in our judgment they do not. When two parties make a contract based on supposed facts which they afterwards ascertain to be incorrect; and which would not have been entered into by the one party if he had known the actual conditions which the contract required him to meet, not only Courts of justice but all right thinking people must believe that the fair course for the other party to the contract to pursue is either to relieve the contractor of going on with his contract or to pay him additional compensation. If the difficulties be unforeseen, and such as neither party contemplated, or could have from the appearance of the thing to be dealt with anticipated, it would be an extremely harsh rule of law to hold that there was no legal way of binding the owner of property to fulfill a promise made by him to pay the contractor such additional sum as such unforeseen difficulties cost him. But we do not understand the authorities to sustain such a rule, on the contrary they hold that the parties can rescind the original contract, and then enter into a new one, by which a larger consideration for the same work and materials that were to be done and furnished under the first contract can be validly agreed upon. Persons competent to contract can as validly agree to rescind a contract already made, as they could agree to make it originally, but we are met with the contention (which it must be admitted is sustained by Courts of high authority) that while this is true, yet after a contract is broken by one of the parties the other cannot waive his right to treat it as no longer existing and bind himself to pay more than the original contract called for, unless the orignal contract is actually rescinded.

Such authorities are based upon the ground that there is no consideration for the promise, and in that connection we will review the decisions of this State as to whether a moral obligation is sufficient to support a contract, as there is some conflict between them, and consequently a misunderstanding as to what the law of this State is on that subject. In *State* v. *Reigart*, 1 Gill, 1, our predecessors held that, "A contract founded upon an equitable duty, such as would be enforced

by a Court of equity, or upon a moral obligation, which no Court of law or equity can enforce, or to do that which an honest man ought to do, or upon the waiver of a legal right by the party entitled to it is maintained by a sufficient consideration." That decision in reference to the moral obligation was based on what LORD MANSFIELD had said in *Hawkes* v. *Saunders,* Cowper, 289, although at that time his doctrine had been overruled in England. *Eastwood* v. *Kenyon,* 11 Ad. & E. 438. In *Ellicott* v. *Peterson,* 4 Md. 492, although LEGRAND, C. J., said : "We regard the moral obligation resting on the defendant's testator, as a sufficient consideration to support his promise to pay," the decision was really based on the fact that the testator had promised to pay for the services before they were rendered. After quoting what LORD MANSFIELD said in *Hawkes* v. *Saunders,* JUDGE LEGRAND added, "This language of LORD MANSFIELD, however, must be understood as applying only to cases of promise where there was a pre-existing obligation, either legal or equitable, to pay, and not as extending to that class of cases which arise out of the moral affections alone." In *Drury* v. *Briscoe,* 42 Md. 154, JUDGE STEWART said : "If the husband was under a moral obligation, which no Court could enforce, and promised to pay the claim, the honesty and rectitude of the same is a sufficient consideration," but in that case there was a valuable consideration and it was not dependent upon the principle above stated.

In *Ingersoll* v. *Martin,* 58 Md. 74, this Court, through JUDGE ALVEY, held that, "a mere moral obligation simply would not be a sufficient legal foundation for the promise." After quoting from LORD MANSFIELD and saying that more recent decisions had considerably modified his statement that, "Where a man is under a moral obligation, which no Court of law or equity can enforce, and *promises,* the honesty and rectitude of the thing is a consideration," JUDGE ALVEY said : "It is now understood, both in England and in this State, as being so restricted as not to apply or extend to that class of cases which arise out of the moral duties or affections alone. There must be something more to support an express promise to

pay," citing *Ellicott* v. *Peterson* and *Eastwood* v. *Kenyon.* In that case the question was directly involved, and the law of this State seemed to be considered settled on the subject, as will be seen by *Brantly's Law of Contracts*, 67. But in *Robinson* v. *Hurst*, 78 Md. 69, a statement is made in the opinion that "This Court, has never, when called upon, hesitated to say, that a moral obligation is a sufficient consideration to support a promise to pay" and the reporter stated that in the syllabus. The opinion of the Court refers to the Maryland cases above cited, including *Ingersoll* v. *Martin*, the effect of which was in some way overlooked. As that statement was not necessary for the purposes of the case, and the citation of previous cases shows that it was not the intention to overrule that of *Ingersoll* v. *Martin*, we cannot so accept it, and the rule as announced in *Ingersoll* v. *Martin* must still be accepted as the law of this State on that subject. We have thus referred to the subject as some length in order that the error in *Robinson* v. *Hurst* be corrected, and to show what the law of this State now is, for if it was still as announced in *State* v. *Reigert, supra,* there would be no necessity to look for a consideration other than the moral obligation resting on the appellant.

We are, however, of the opinion that this prayer can be sustained on the ground stated in *King* v. *Duluth, etc., Ry. Co., supra,* and other cases, which is, as expressed in that case, that "by the voluntary and mutual promises of the parties their respective rights and obligations under the original contract are waived, and those of the new or modified contract substituted for them." When there is such a strong moral obligation as there was in this case to give the appellee relief, it would be making an exceedingly technical distinction to hold that the promise would have been binding if the original contract had been expressly rescinded, but that is not binding because there was no express or actual rescission, although the facts show that it was undoubtedly intended by the parties that neither should be held to the terms of the original contract. Of course it will be borne in mind that the

Court in *King* v. *Duluth, etc., Ry. Co.*, only applied the principle announced to cases where the refusal to perform was equitable and fair; and the difficulties were substantial, unforeseen and not within the contemplation of the parties when the original contract was made. The opinion also excluded from the application of the principle mere "inadequacy of the contract price which is the result of an error of judgment, and not of some excusable mistake of fact." We need not go further than the doctrine announced by that case; but there are many others based upon the principle of waiver, some of them not being affected or governed by the motive of the promisee in refusing to perform the original contract, and we do not want to be understood by referring to or quoting from them as meaning to adopt all that is said in them.

In *Meech* v. *Buffalo*, 29 N. Y. 198, it was held that a municipal corporation, with power to construct public improvements, could bind itself to pay an increased compensation to a contractor, in consequence of the enhanced cost of the work by reason of a fact not within the knowledge of the parties at the time of the making of the original contract. In that case the contractor in building a sewer came in contact with quicksand. In *Michaud* v. *McGregor*, 61 Minn. 198, (s. c. 63 N. W. 479) contractors undertook to build a house on the lots of the promisor, in the city of Duluth. In the course of construction they met with unexpected obstacles, unknown to either party when the contract was made, being rocks below the surface of the lots which had been placed there by the city. The contractors refused to proceed with their contract unless paid for extra work in removing the rocks, which the agent of the owners agreed to do, provided they would keep a strict account of such extra work and aid in securing evidence of appellant's damages. The contractors assented and performed their part. It was held the contract was supported by a valid consideration. In *Goebel* v. *Linn*, 47 Mich. 489, JUDGE COOLEY sustained an action on a note which included the price of ice in addition to the original contract price. He referred to unexpected and extraordinary circumstances

arising. That case goes further than most we have found, and it has been suggested that it has been overruled by *Widiman* v. *Brown*, 83 Mich. 241, but *Goebel* v. *Linn* was not only not *in terms* overruled, but was cited to the Court, and the Court simply said it and the other cases did not bear out the contention of the defendant, without in any way intimating any dissatisfaction with that case. In *Osborne* v. *O'Reilly*, 42 N. J. Eq. 467, complainant had agreed to do certain excavation, blasting, etc., on a railroad, as a sub-contractor under defendant at a fixed price. The agreement was made under certain misrepresentations of the company as to the character and quality of the work to be removed, whereas in fact the rock proved to be much harder than represented, more expensive to drill and worthless afterwards for foundations, culverts, etc. The contractor promised to allow the complainant an additional sum per cubic yard and it was held that his estate was liable to account therefor. New promises have been held to be valid on various grounds in a number of cases, all of which we do not adopt, but in addition to those already cited we refer to *Cooke* v. *Murphy*, 70 Ill. 96; *Lawrence* v. *Davey*, 28 Vt. 264; *Connelly* v. *DeVoe*, 37 Conn. 570; *Courtenay* v. *Fuller*, 65 Me. 156; *N. J. Trust Co.* v. *Nat. Gas Co.*, 71 N. J. L. 29 ( s. c. 58 At. 104); *Agel* v. *Patch Mfg. Co.*, 77 Vt. 13 (s. c. 58 At. 792). See also 30 *Am. & Eng. Ency. of Law*, 1197, where it is said that when the contractor refuses to perform his contract, and the builder promises to pay him additional compensation in consideration of the performance of the contract, the authorities are not in accord, but adds that "the prevailing rule seems to be, however, that such a promise is valid, as an abandonment of the original contract and the creation of a new contract."

In *Anson on Contracts*, 76, after speaking of the well known case of the sailors not being entitled to recover more than their contract called for, it is said: "It would have been otherwise if risks had arisen which were not contemplated in the contract. For instance, such a contract as that which the seamen had entered into in the case just cited contains an im-

plied condition that the ship shall be seaworthy." Mr. Brantly on page 70 of Law of Contracts, after referring to the other doctrine, says: "But the rule of other cases is that the promise is valid because the promisee is entitled to choose between the risk of being sued for a breach of his contract and the prospect of loss from going on at the original price. It also seems that the new promise of additional compensation amounts to a novation or a substituted contract. While a contract is executory on both sides, the parties are at liberty to rescind it by substituting a new one in its place."

So without further citation of authorities we are of the opinion that the fifth prayer of the plaintiff was properly granted for reasons stated above. It follows that the first, second, fourth, sixth and seventh prayers of the defendant were properly rejected, as they in different forms present views contrary to the plaintiff's prayer. The third was also properly rejected, as there was some evidence to prove the delivery of the materials. We see no error in admitting the evidence referred to in the first exception. Under the plaintiff's theory he was to be paid the cost of making the cellar and the bills he paid or was liable for were admissible. The objection to the use of the bill of particulars was not well taken, but at any rate the subsequent agreement of counsel that the items set out in it appeared in the bills rendered by certain parties named relieved it of all question. It was a proper precaution for the protection of the defendants to see that such items were in the bill of particulars, and it was certainly proper for the plaintiff to show that items he was claiming payment for were there. We do not understand why the book of plaintiff mentioned in the third exception was objected to. He claimed to make the entries of payments by him in the book. If there could have been any injury by reason of the form of the question in the fourth bill of exceptions it was not answered, and another question was asked, which was not excepted to. It was certainly admissible to prove by the defendant, or any other witness, such deliveries of lumber, etc., as he knew of. The fifth and sixth exceptions to strike out

testimony were too general to inform us just what testimony was referred to, but we see no reason why such testimony as is mentioned in the latter part of those exceptions was not admissible.    Payments had been made to the plaintiff from time to time and it was proper to show on what part of the work the money was paid, so as to enable the jury to determine what, if anything, was due on the work in controversy.    The testimony of Mr. Preston was relevant under our view of the law as announced above.    Objection to that was presented by the seventh bill of exceptions.    The eighth embraces a motion, made at the conclusion of the testimony, to strike out all testimony tending to prove the making of a new promise, etc., which had been admitted subject to exception.    After what we have said above, it is unnecessary to further consider that question.    Finding no reversibie errors in any of the rulings, the judgment will be affirmed.

> *Judgment affirmed, the appellant to pay the costs.*