**UNITED STATES, for Use of WILKINSON, v. LANGE et al.**

**Civ. No. 773.**

District Court, D. Maryland.

Sept. 28, 1940.

J. Harry Cross, of Baltimore, Md., for plaintiff.

Eugene Frederick, of Baltimore, Md., for defendants.

WILLIAM C. COLEMAN, District Judge.

This is a suit on a contract brought pursuant to the provisions of the Act of August 24, 1935, Chapter 642, Secs. 1–4, 49 Stat. 793, 794, 40 U.S.C.A. §§ 270a to 270d, inclusive, enacted to protect those furnishing materials or labor for construction of public buildings or works of the United States, as well as to secure the Government in connection with such construction.

The material facts, briefly stated, are that in connection with the construction of a laundry building at the United States Naval Academy, Annapolis, Maryland, the use plaintiff, C. M. Wilkinson Company, with principal place of business in Cleveland, Ohio, hereinafter referred to as Wilkinson, contracted as a sub-contractor of the defendants, Lange Brothers, with principal place of business in Audubon, New Jersey (the other defendant, the Aetna Casualty & Surety Company, of Hartford, Connecticut, being surety on the bond of Lange Brothers), to construct and install in this building a laundry or clothes chute.

On November 11, 1938, Wilkinson made a written offer to do the work for $347, which was reduced to $325 and embodied in a formal contract entered into by the parties bearing date of March 1, 1939, by the terms of which the entire work was to be done in strict accordance with the plans and specifications of the Government architect, subject to the approval and acceptance of both Lange Brothers and the Government, and Wilkinson was to have the material completely fabricated and ready for delivery not later than May 15, 1939. It appears that Wilkinson was quite dilatory in examining the Government specifications which were made a part of the contract, and in submitting the requisite shop drawings, etc., to Lange Brothers; and that after the specifications had been fully understood, Wilkinson claimed that to comply strictly with the Government specifications, stainless steel would have to be supplied in the construction of the chute, instead of a copper-bearing metal upon which Wilkinson had based his original estimate and entered into the contract of March 1st, and that therefore this change would greatly increase the cost.

Protracted correspondence ensued and Wilkinson remained in default with respect to performance within the time specified in the contract. Although there was

no admission on the part of Lange Brothers that Wilkinson could not reasonably have foreseen the increased cost if he had been diligent and thorough in his examination of the specifications, Lange Brothers, nevertheless, entered into a second formal agreement under date of July 24, 1939, that is, more than two months after the time when Wilkinson had obligated himself under the contract of March 1st to be ready to make delivery of the fabricated material. No delivery had been made or tendered under this first contract; nor had any payments been made thereunder.

This second contract was accepted by Wilkinson on August 18th, and in it the price agreed to be paid to Wilkinson was increased to $1,106 and time for delivery was extended to September 12th. This later contract is otherwise identical with the contract of March 1, 1939, except in a few respects which will be hereinafter referred to. No mention is made in the later contract of the earlier one. This later contract was submitted to Wilkinson by Lange Brothers under date of July 24th with a letter which, likewise, makes no mention of the earlier contract. The same printed form, supplied by Lange Brothers, was made use of in both cases.

For a number of weeks thereafter Lange Brothers continued to complain, through correspondence, of the alleged unwarranted delay on the part of Wilkinson in completing the work. Dispute arose as to precisely what was required by the Government specifications with respect to certain features of the construction. It was not until September 9th that the fabricated material left Wilkinson's plant. At about the same time, Wilkinson billed Lange Brothers for $940 representing 85% of the second contract price. Although the contract of July 24th, as well as the contract of March 1st, provided that payments should be "on the basis of monthly payments of 90% of the value of the work performed during the preceding month, payable on or before the 20th of the month, final payment to be made thirty days after the completion and acceptance of the work, based on payments rec'd by contr. from owners", no installment payments were made, nor do they appear to have been demanded by Wilkinson. On November 22nd, Lange Brothers wrote Wilkinson that they had so far been unable to get written approval of the work from the Government but that they expected same before the end of the month "which

should enable us to dispose of same. In the meantime, we are forwarding you our check in the amount of $230.00 on account." This payment was accepted by Wilkinson on November 27th with a voucher showing the balance still due, and with an expression of disappointment at not receiving a larger remittance and of expectation of "a further substantial payment at an early date." On December 20th Lange Brothers wrote Wilkinson "that the building is now fully completed and expect the acceptance of same by the Government in the near future, and as soon as this is done we will dispose of the balance of our account with you." Lange Brothers concluded by thanking Wilkinson for his "patience and cooperation." Wilkinson continued to press Lange Brothers for payment, and on January 13, 1940, Lange Brothers sent him a check for $29.11, stating that this was the "final payment" after taking into account the previous payment of $230 and certain minor charges in acordance with specified invoices and "the additional cost to us to complete your original contract with us dated March 1, 1939." This last communication was acknowledged by Wilkinson by letter dated January 18th in which the remittance of $29.11 was not accepted as final payment (the check for same being held pending receipt of the balance still claimed to be due, and has never been cashed), and demand was made for the balance still claimed to be due under the second contract, namely, the price named in that contract, $1106, less the payment of $230 made on November 22nd. Lange Brothers' refusal to pay the balance continued and the present suit was filed July 17th, last.

Plaintiff now claims $810.11, admitting a credit deduction of $65.89 on account of transportation charges in addition to the payment of $230.

The Court finds that judgment must be for the plaintiff for the sum claimed, namely, $810.11. No interest will be allowed, counsel for plaintiff having waived any claim thereto.

■ Both of the contracts in suit were made in Maryland because not completed until defendants had signed them in Baltimore after the plaintiff's signature had been obtained. Therefore, Maryland law governs.

■ The rule in Maryland, which is the law generally, is that a promise to do,

or actually doing, no more than that which a party to a contract is already under legal obligation to do, is not a valid consideration to support the promise of the other party to the contract to pay additional compensation for such performance. In other words, a promise by one party to a subsisting contract to the opposite party to prevent a breach of the contract is without consideration. Or, stated in still another way, where the promise of the one is no more than a repetition of a subsisting legal promise, there can be no consideration for the promise of the other party and there is no warrant for inferring that the parties have voluntarily rescinded or modified their contract. Linz v. Schuck, 106 Md. 220, 67 A. 286, 11 L.R.A., N.S., 789, 124 Ann.St.Rep. 481, 14 Ann.Cas. 495. However, if the debtor does something more or different in character from that which he was legally bound to do, such will be sufficient consideration. That is to say, if the act, the performance of which or the promise of which is the consideration for the new agreement, differs in any respect from the act which one of the parties was under a previous obligation to perform, the second agreement is binding because the difference, however trifling, is enough to make the new performance detrimental or the new promise, a promise of something detrimental. That is to say, the additional consideration may consist of anything which would be a burden or inconvenience to the one party or a possible benefit to the other. Booth v. Campbell, 15 Md. 569; Maddux v. Bevan, 39 Md. 485, 499; Chicora Fertilizer Co. v. Dunan, 91 Md. 144, 46 A. 347, 50 L.R.A. 401; Singer Sewing Machine Co. v. Lee, 105 Md. 663, 66 A. 628; Dickson & Tweeddale v. Fowler, 114 Md. 344, 79 A. 519; Hercules Powder Co. v. Campbell, 156 Md. 346, 144 A. 510; see, also, Williston on Contracts, Rev. Ed., §§ 121 and 131 (b); and Restatement of the Law of Contracts, § 84 (c). Also, there is another rule established in Maryland which must be recognized, namely, if one of the parties to a contract to perform certain work for a stipulated sum, refuses to complete the contract on account of substantial difficulties in the performance, which were not known or anticipated by either party when the contract was entered into and which cast upon him an additional burden not contemplated by either party and the opposite party promises him an additional sum if he will complete his contract, and he does so, the promise of additional payment is enforcible even though the original contract for the lesser sum has not been expressly rescinded. Linz v. Schuck, Dickson & Tweeddale v. Fowler, and Hercules Powder Co. v. Campbell, supra.

Defendants in the present case claim that neither of these latter rules may properly be invoked on the facts as disclosed by the testimony. With that contention we cannot agree,—certainly not as to the first of these rules.

First, let us see whether by the second contract plaintiff has agreed to do something different from what he had agreed to do under the first contract. If he has, that, as we have seen, is sufficient new consideration—sufficient legal detriment, no matter how trifling—to support defendants' promise to pay more.

■ Apart from the postponement in the second contract, for approximately four months, of the date specified for delivery of the fabricated material by the plaintiff under the first contract, there are two expressed differences in the two agreements: First, in the earlier contract it is provided that the sub-contractor, the present plaintiff, shall submit, not later than ten days after the date of the contract, copies of all of the shop drawings and also the names of materials and appliances called for by the specifications; whereas in the later contract, the time allowed for so doing is cut in half, namely, five days only is allowed. But the really significant thing, from the point of view of consideration, is not the element of time, but the fact that a completely new set of drawings, etc. was required to be furnished by plaintiff. This was an undertaking additional to the first undertaking, and thus is legally sufficient consideration for Lange Brothers' promise to pay the higher price. It cannot be said that this provision should be given no effect, that it was mere surplusage inadvertently used, as part of the same printed form used for both contracts, since, as the correspondence shows, one set of drawings, etc., had been furnished by plaintiff following the first contract and before the making of the second one, and thereafter a new set of drawings, etc., was actually demanded by and furnished to Lange Brothers by plaintiff. Second, in the earlier contract, Lange Brothers reserved the right to cancel it if not properly executed and returned within

five days from its date. In the later contract, the time is reduced to four days.

The above noted changes in and of themselves bring the case within the rule just stated, that if the act, the performance of which or the promise of which is the consideration for the new agreement, differs in any respect from the act which one of the parties was under a previous obligation to perform, the second agreement is binding because of this difference, however trifling.

It thus becomes unnecessary, in giving judgment for the plaintiff, to consider further the second ground concerning which so much has been said and so much evidence has been introduced, namely, whether the second contract is to be treated as binding for the reason that the Government specifications differ in material respects—especially with respect to the type of sheet metal to be used—from what the plaintiff understood was called for when his original proposal was accepted and the first contract was entered into, thus greatly increasing the cost of the work. This much, however, will be said, that on the state of the evidence one may quite reasonably entertain a doubt as to whether judgment for the plaintiff may not be rested upon this latter ground also.

On the one hand, plaintiff was clearly negligent in not ascertaining more promptly what the precise specifications were and in not progressing the work more speedily. Plaintiff cannot be heard to say that he did not know the precise type of metal or any other details that the Government might require, because the first contract—identical with the second in this respect—referred to the Government specifications, separately prepared, as binding, and these specifications were available to the plaintiff before signing the contract as well as afterwards, and he should have carefully studied them before contracting. On the other hand, it is a reasonable inference that Lange Brothers accepted the attitude assumed by the plaintiff that substantial difficulties existed which neither of the parties foresaw at the time when the original bid of November 11, 1938, was accepted, and also, when the original contract of March 1, 1939, was entered into. Certainly, the correspondence taken as a whole indicates the development of a willingness on the part of Lange Brothers to recognize the difficulties that beset plaintiff. They were not obligated to do so. They

could have stood upon their rights under the original contract, charged plaintiff with negligence in not ascertaining and following the specifications, and could have declared the contract breached. But they did not do that. On the contrary, they finally agreed to pay more—approximately what the plaintiff claimed he was entitled to, because of his misunderstanding of what the specifications really called for. Lange Brother went so far as to get other bids in an effort to find out what work of this kind was really worth. Finding that third parties would not do it for as little as plaintiff said he was willing to do it for, on his corrected figures, after ascertaining all of the details of the specifications, Lange Brothers saw fit—and this seems to the Court to be the crux of the case—to enter into another formal agreement which modified some of the terms of the first agreement. These were of a minor nature to be sure, but they might have been important to the plaintiff or to Lange Brothers, or both. In any event, they did change the previously existing obligation of the plaintiff and this change is legally sufficient to rebut the charge of past consideration. All "sins" were forgiven on both sides and the parties started over again on a new basis—albeit it was only very slightly different from the old one except as to price and the old one was not expressly rescinded.

Under these circumstances, to say there is no consideration to support the promise to pay plaintiff what Lange Brothers must have recognized was a fair amount, and what they voluntarily stipulated in the new contract, would be tantamount to imposing a rule of law upon commercial dealings that would not be consistent with sound business principles.

The point is stressed in the present case on behalf of Lange Brothers that all they did in getting outside bids was to see what their ultimate loss might be, so they would know what they might impose upon the plaintiff by way of damages, that is remuneration, for completion of the work. The point is also stressed that time had become so much of the essence that plaintiff's delay was one of the things that was likely to hold up payment by the Government on the entire project—that the situation presented, in effect, the elements of duress, or at least of such hardship as to warrant Lange Brothers in doing what they did, that is, leading the plaintiff into

a new formal contract and then saying to him: "But we never intended to pay you approximately three and a half times as much as we agreed to pay you four months ago for the same work, and you should never have thought such was our intention; we made the second contract with you only for the purpose of ascertaining the measure of damages in the event of your default, namely, the difference between what we originally agreed to pay you for the work and what we could get it done for elsewhere." But it is to be noted that the default had already occurred, and instead of standing on their legal rights incident thereto, Lange Brothers elected to continue with the plaintiff on a new basis.

After the making of the second contract, there is no mention in any of the correspondence of the first contract, and no statement from which it could be inferred that the first contract was thought to be other than out of the way, entirely displaced by the second one, until Lange Brothers' letter of January 13, 1940, which was preceded by letters (those of November 22 and December 20, 1939) which, by the language employed, and in the light of the letters from the plaintiff to which they must have been in reply although not expressly referring to specific letters, must have had the second contract in mind. All of this supports the conclusion here reached that Lange Brothers as well as the plaintiff, by the negotiations which finally led up to the contract of July 24th and by that contract, intended that the plaintiff should get the increased price provided for in the later contract because of the fact that the cost of doing the work was found, after the first contract was made, to be much higher.

Finally, it may be said that resistance to the present suit consummates an attempt on the part of Lange Brothers, inequitably to deprive the plaintiff of just compensation for work satisfactorily done. There is no claim in the present case that the work was not satisfactorily done. On the contrary, it was admitted that it was accepted by the Government as being in accordance with the specifications. Also, Lange Brothers admit that they have paid no penalty because of plaintiff's delay or negligence.

Judgment will be entered for the plaintiff in accordance with this opinion.