## DOWLING ET UX. *v.* BRUFFEY

[No. 376, September Term, 1971.]

*Decided June 13, 1972.*

The cause was argued before BARNES, McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ., and DULANY FOSTER, Chief Judge of the Supreme Bench of Baltimore City, specially assigned.

*Charles W. Bell* and *John T. Bell,* with whom were *Frank S. Cornelius* and *Bell & Bell* on the brief, for appellants.

*Robert E. Bullard,* with whom were *Bullard & Deutchman* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

There came a time in October of 1967 when Joseph A. Dowling and Sandra L. Dowling (the Dowlings) entered into a contract with Robert C. Bruffey, under the terms of which Bruffey was to build a house for $25,594.00 on certain lots which the Dowlings owned in Prince George's County. The house was finished by June of 1968, at which time the Dowlings had paid Bruffey all but about $5,000.00 of the basic contract price without taking into account charges for extra work and credits for work and materials not to be performed or provided. According to Bruffey, the Dowlings had been sent statements on 10 June and again on 29 October 1968 which included among "extras" $2,080.00 for additional excavation and footings. Mr. Dowling denied receiving the June statement, but did make payments in June and October of 1968 totalling $4,720.00 as well as payments in April and May of 1969 approximating $1,000.00, leaving an unpaid balance of $1,968.48. When the Dowlings refused to make this final payment, Bruffey brought suit and the Dowlings counterclaimed for certain uncompleted work. From a judgment for $1,653.23 in Bruffey's favor the Dowlings have appealed.

While the facts of this case are diametrically opposed to those in *Evergreen Amusement Corp. v. Milstead,* 206 Md. 610, 112 A. 2d 901 (1955), we propose to affirm the judgment entered below, because we regard the rule of *Evergreen* as controlling here.

In *Evergreen,* the contractor, Milstead, entered into a written contract to supply the necessary materials and perform the work necessary to clear the site on which an outdoor theatre was to be located and to "grade the site as indicated on the plans" for a fixed price. The contract contained the further proviso, "At this contract price, no additional fill material will be substituted for unsuitable

material found on the site." Judge (later Chief Judge) Hammond, writing for the Court, summarized the facts:

"The trial court found that both sides assumed when they contracted and the work began, that the site could be graded merely by moving the earth from certain parts of it to other parts, and that no additional dirt from the outside would be needed to reach the desired grade. Preliminary engineering studies on both sides, such as they were, relied on a contour map showing the topography of the ground, based on a survey made by a man who did not testify. Doubt was cast on the accuracy of the map by an engineer, who explained that the piles of debris, stumps and tree trunks on the property when the map presumably was prepared, would have made it difficult accurately to prepare it. The court found that the only accurate method would have been to make a complete cross-section of the property at reasonable intervals. It found the calculations of both sides to have been in error, as the fact that after some eight thousand cubic yards of dirt were hauled in the grading was still not finished as desired, bears persuasive witness. Indeed, the parties agreed that the north side of the site should be left slightly below the planned grade so that additional dirt would not have to be brought in. In any event, it was soon discovered that the cuts and fills would not balance and that a large amount of borrow would be required. At a meeting of the parties, it was agreed that such fill dirt as was needed to bring the site up to grade would be brought in, except at the north side, and that the appellee would be paid for this borrowed dirt at sixty-eight cents a yard. This agreement is denied by the appellant but the trial court found as a fact that it was made." 206 Md. at 614-615.

The factual problem in the case before us is the other side of the coin. The significant provision in the contract which the Dowlings entered into with Bruffey is found in the specifications: "Excavation: bearing soil, type—undisturbed earth." Dowling had permitted the lots to be filled when an adjacent road was built, and told Bruffey this. From an examination of the topography—no test borings were made—both the owners and the contractor assumed that about eight feet of fill dirt had been placed on the site, which would be removed when the cellar excavation was made.

The conditions which were encountered were vastly different. When Bruffey completed what he thought would be the necessary excavation, further work was stopped by a Prince George's County building inspector until Bruffey agreed to take the foundation and footings to a much greater depth. An additional eight feet of excavation was ultimately required to place the footings on undisturbed earth.

Bruffey said that he met the Dowlings at the lot,

"* * * I showed them the problem we were in, and I told them I knew they didn't have the money, and I told them that I would be happy to do the job at cost * * *.
* * *
"They said to go ahead."

In response to a suggestion that he be more specific, Bruffey continued:

"Well, they wanted the kind of estimate of what I thought it would run, and of course I quickly kind of figured out what I thought it would be, and I gave them a price that I thought would run around twelve hundred dollars.
"Q To do what?
"A To put in this extra foundations, footings, and flue; the base for the chimney.
"Q And what did they say?
"A Fine, go ahead."

Mr. Dowling admitted that he had met Bruffey at the lot after the building inspector had stopped the work, but said that Bruffey had "never made it clear" that there would be an extra charge. The trial court, which tried the case without a jury, found as a fact that the parties had agreed that the contractor should perform "extraordinary work" not covered by the contract. We cannot say that this finding was clearly erroneous, Maryland Rule 886.

What we said in *Evergreen* seems to be controlling here:

> "It is undenied that the owner and contractor both thought it to be a solid fact that the cuts and fills would balance. Certainly the discovery that outside fill dirt to the value of thousands of dollars—more than the whole of the original contract cost—would be needed to reach grade, was not only evidence of mutual mistake but of revelation of unforeseen difficulty. In *Lange v. United States*, 4th Cir., 120 F. 2d 886 [1941], Judge Dobie, for the Court, pointed out that the general rule is that doing something one is under legal obligation to do, is not consideration which will support a promise to pay additional compensation therefor, and said: 'But to this rule the Court of Appeals of Maryland admits an exception, an exception criticized by Williston on Contracts, Sec. 130 (a), but seemingly recognized in the Restatement in Sec. 76, Illustration 8.' " 206 Md. at 615-616

The exception to which Judge Dobie referred originated in *Linz v. Schuck*, 106 Md. 220, 67 A. 286 (1907), a case similar to the one before us. There, Schuck, a contractor, entered into a contract with Linz, a property owner. Schuck agreed to dig a cellar to a depth of seven feet and cement it for $1,500.00. After excavating to a depth of three feet Schuck encountered what appeared to be a swamp some 14 feet deep. A building inspector

stopped the work, but Linz insisted that it should be completed. Schuck was permitted to recover on Linz' promise to pay for the extra work made necessary by the unforeseen difficulties.

In *Linz*, our predecessors said:

> "When two parties make a contract based on supposed facts which they afterwards ascertain to be incorrect; and which would not have been entered into by the one party if he had known the actual conditions which the contract required him to meet, not only Courts of justice but all right thinking people must believe that the fair course for the other party to the contract to pursue is either to relieve the contractor of going on with his contract or to pay him additional compensation. If the difficulties be unforeseen, and such as neither party contemplated, or could have from the appearance of the thing to be dealt with anticipated, it would be an extremely harsh rule of law to hold that there was no legal way of binding the owner of property to fulfill a promise made by him to pay the contractor such additional sum as such unforeseen difficulties cost him. But we do not understand the authorities to sustain such a rule, on the contrary they hold that the parties can rescind the original contract, and then enter into a new one, by which a larger consideration for the same work and materials that were to be done and furnished under the first contract can be validly agreed upon." 106 Md. at 230

This was not, as the Dowlings contend, an instance where a written contract was modified by parol, but instead a case where an entirely separate undertaking based on an oral agreement came into being as a result of the unforeseen difficulty.

*Judgment affirmed, costs to
be paid by appellants.*